**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1716
_____

WILLIAM BELL,
                                        Appellant
                    v.

PLEASANTVILLE HOUSING AUTHORITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 09-cv-04614)
District Judge: Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 25, 2011
Before:  SLOVITER, FISHER and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 26, 2011)
_____

OPINION
_____

PER CURIAM.

        William Bell appeals the District Court's dismissal of his civil suit for lack

of subject-matter jurisdiction.  We conclude that the District Court erred insofar as Bell's

amended complaint, liberally construed and viewed in conjunction with his other filings

below, contained allegations sufficient to invoke the District Court's original jurisdiction

under 28 U.S.C. § 1331.  Accordingly, we will vacate the judgment of the District Court

and remand to that court for further proceedings consistent with this opinion.

## I. Background

In September 2009, Bell filed a pro se complaint in the United States District Court for the District of New Jersey against the Pleasantville Housing Authority (Pleasantville). Bell alleged that Pleasantville caused him to be dispossessed from his government-subsidized housing, and that the state court eviction proceedings did not provide him all the process he was due. In particular, Bell alleged that his eviction was premature, given that he requested a grievance hearing under applicable United States Department of Housing and Urban Development (HUD) regulations.

Bell specifically cited in his complaint 24 C.F.R. § 966.4(l)(3)(iv), which provides that "[w]hen the PHA is required to afford the tenant the opportunity for a hearing under the PHA grievance procedure for a grievance concerning the lease termination, the tenancy shall not terminate . . . until the time for the tenant to request a grievance hearing has expired, and (if a hearing was timely requested by the tenant) the grievance process has been completed." (internal citation omitted).[1] Explicitly invoking 28 U.S.C. § 1331 as the basis for the District Court's jurisdiction, and 42 U.S.C. § 1983 as providing the cause of action, Bell sought "an order . . . enjoining the Defendant from

---

1 "PHA" is an acronym for "Public Housing Agency" and "means any State, county, municipality, or other governmental entity or public body, or agency or instrumentality of these entities, that is authorized to engage or assist in the development or operation of low-income housing under the [United States Housing Act of 1937, 42 U.S.C. § 1437 et seq]." 24 C.F.R. § 5.100. The PHA in this case is Pleasantville.

removing and disposing of the Plaintiff's personal effects . . . from [his] former residence."

Pleasantville filed an answer raising twelve different affirmative defenses, along with counterclaims against Bell based on the following allegations:

> Plaintiff violated the terms of the Lease, Admissions and Continuation Policy by vacating the apartment, without notice to the Pleasantville Housing Authority, for a period of greater than one month; by failing to respond to notices to appear or contact staff at the Pleasantville Housing Authority concerning his continued tenancy; by maintaining a primary residence at another location outside of the Pleasantville Housing Authority while still receiving federally funded benefits for housing; by subletting or allowing unauthorized use of the Pleasantville Housing Authority Unit to individuals not on plaintiff's Lease by making misrepresentations concerning his residency status for the purpose of gaining public benefit for which he would not
> be [otherwise] entitled to.

In January 2010, Bell filed an untitled document asserting against Pleasantville a claim of "unlawful housing discrimination within the meaning of the New Jersey Law Against Discrimination . . . based on his physical disability and sex (male)." Significantly, Bell also repeated in the untitled document his original allegation that he requested and was impermissibly denied a grievance hearing by Pleasantville prior to his eviction.  In addition, Bell alleged that Pleasantville denied him a reasonable accommodation for his physical disability, and that it "did not take into consideration that he was attending the vocational rehabilitation program at NYU when they evicted him."

3

He requested an indeterminate amount of compensatory damages for his "economic loss, humiliation, and mental pain and suffering."

The District Court construed Bell's January 2010 filing as an "application to amend his complaint," noting that at a March 26, 2010 status conference Bell "advised the Court that he intended his [January 2010] 'Statement' to be his amended complaint." The District Court granted the application and stated that Bell's January 2010 filing "shall be deemed to be plaintiff's amended complaint." Although the District Court ordered that Pleasantville answer the amended complaint, Pleasantville chose to re-file its answer to Bell's original complaint.[2]

By order entered December 17, 2010, the District Court sua sponte raised the issue of its subject matter jurisdiction. That order read, in pertinent part:

> IT FURTHER APPEARING THAT Plaintiff's only cause of action alleged in his Amended Complaint is predicated solely upon state law; and

> THE COURT FURTHER FINDING THAT Plaintiff's Amended Complaint does not properly allege diversity jurisdiction, in that . . . (1) Plaintiff has failed to properly plead diversity of citizenship . . . [and] (2) Plaintiff has failed to allege an amount in controversy that exceeds $75,000 . . . .

In the same document, the District Court ordered that Bell "shall have 30 days to amend his complaint to properly plead his citizenship and state an amount in

---

[2] Three months later, Pleasantville moved to dismiss Bell's complaint, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) & (d)(1)(A)(i), because Bell refused to be deposed. The District Court's resolution of this motion is not before us.

4

controversy. If Plaintiff fails to do so, the case will be dismissed for lack of subject matter jurisdiction." Bell failed to timely respond to that order and, on January 24, 2011, the District Court dismissed his complaint for lack of subject-matter jurisdiction. Bell then forwarded to the District Court a July 2009 letter communication to Pleasantville from Bell's attorney in the state eviction case, which concerned the attorney's attempts to "to resolve [the state eviction] case by way of a consent order requiring Mr. Bell to move but granting him a reasonable time in which to do so." The District Court construed the forwarded letter as a motion for reconsideration under its local rules and, so construed, the District Court denied the motion by order entered February 2, 2011. Bell filed his notice of appeal on March 16, 2011.

## II. Jurisdiction and Standard of Review

"Federal Rule of Appellate Procedure ('FRAP') 4–in conjunction with Federal Rule of Civil Procedure 58–sets out the mechanism for determining when the time to appeal begins." In re Cendant Corp. Sec. Litig., 454 F.3d 235, 240 (3d Cir. 2006). Under Rule 58, every district court judgment, save those specifically exempted by Fed. R. Civ. P. 58(a)(1)-(5), "must be set out in a separate document." Fed. R. Civ. P. 58(a). "If the separate document rule applies, then both Rule 58(c)(2) and Fed. R. App. P. 4(a)(7)(A)(ii) provide that the time of entry is considered to be the earlier of the date when the judgment is set out in the separate document or 150 days from the entry of the order or judgment in the civil docket." Kunz v. Felice, 538 F.3d 667, 673 (7th Cir. 2008). The Supreme Court has advised that Rule 58 "should be interpreted to prevent loss of the

5

right of appeal, not to facilitate loss." St. Marks Place Hous. Co., Inc. v. U.S. Dep't of Hous. & Urban Dev., 610 F.3d 75, 81 (D.C. Cir. 2010) (quoting Bankers Trust Co. v. Mallis, 435 U.S. 381, 386 (1978)).

The District Court's January 24, 2011 order is the type for which Rule 58 requires the judgment of a district court to be set out in a separate document. Cf. Fed. R. Civ. P. 58(a)(1)-(5). The District Court's order explained the procedural posture of the case and the reasoning supporting its conclusion that it lacked subject-matter jurisdiction ("Plaintiff's only cause of action alleged in his Amended Complaint is predicated solely upon state law"), and the District Court included language ordering that the case be dismissed for that reason. In other words, there is nothing to indicate that the District Court's "order" is "self contained and separate from the opinion," and the order language is not divorced from the "reasons for disposing of the claims." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 224 (3d Cir. 2007); cf. In re Taumoepeau, 523 F.3d 1213, 1217 (10th Cir. 2008) ("A combined document denominated an 'Order and Judgment,' containing factual background, legal reasoning, as well as a judgment, generally will not satisfy [Rule 58]"). Therefore, we conclude that the District Court violated the separate document rule, giving Bell 180 days from January 24, 2011,[3] to file his appeal (until July 23, 2011). See LeBoon, 503 F.3d at 223; Fed. R. App. P. 4(a)(1)(A) & (a)(7)(A)(ii). Thus, when Bell filed his notice of appeal on March 16, 2011,

_____

3 Bell's January 26, 2011 filing was not construed as one of the motions listed in FRAP 4(a)(4)(A), such that it could toll the time for filing the notice of appeal.

6

it was timely.

Accordingly, we exercise appellate jurisdiction under 28 U.S.C. § 1291. We review de novo the questions of subject-matter jurisdiction implicated by the District Court's dismissal of Bell's amended complaint. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3d Cir. 2010).

## III. Discussion

At the outset, we discern no error in the District Court's determination that Bell failed to sufficiently plead the citizenship requirement of federal diversity jurisdiction under 28 U.S.C. § 1332. Bell merely alleged in his amended complaint that he "resides at" a "Rochdale Village, New York" apartment; Bell's physical presence at the address of residence is but only one factor a court would look at in determining whether he is domiciled in New York. See Juvelis v. Snider, 68 F.3d 648, 654 (3d Cir. 1995) (persuasive evidence of intent to remain in a particular location—the "mental dimension" of domicile—"can include establishment of a home, place of employment, location of assets, and registration of car, and, generally, centering one's business, domestic, social, and civic life in a jurisdiction"); see also Washington v. Hovensa LLC, --- F.3d ---, 2011 WL 2899598, at *4 (3d Cir. July 21, 2011, No. 10-2328) ("A party's citizenship is determined by her domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation'") (quoting McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006)). The District Court invited Bell to plead additional facts in support of diversity jurisdiction, but Bell declined to do so.

7

Nevertheless, we believe that the District Court should have exercised its original jurisdiction because Bell's amended complaint is fairly construed as raising a federal question.

In reaching that conclusion, we emphasize that pro se litigants should be "held to a lesser pleading standard than other parties." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is 'to be liberally construed.'") (citation omitted). In his original complaint, Bell specifically claimed that his due process rights were violated by the absence of a grievance hearing prior to his eviction, and he cited 28 U.S.C. § 1331, as conferring jurisdiction. Even though his January 2010 filing, later construed as an amended complaint, focused on alleged gender/disability discrimination in violation of the New Jersey Law Against Discrimination, Bell repeated his allegation that "around May 2009, he made a request for a hearing to [Pleasantville's] Housing Manager, Dawn Toscano . . . [and] was told he was not entitled to a hearing." Furthermore, on March 8, 2010, Bell wrote a letter to the District Court summarizing his case as follows: Pleasantville "commenced a dispossess proceeding in state court before satisfying the legal requirements that must first be met . . . The present lawsuit stems from such improper conduct on the defendant's part [in violation] of the statutory and Fourteenth Amendment rights of the plaintiff." Finally, Bell's January 26, 2011 filing, construed by the District Court as a motion for reconsideration, relates almost exclusively to Pleasantville's alleged failure to provide a pre-eviction grievance hearing, as required by

8

HUD regulations.

It is hardly a stretch, then, nor is it indicative of "paternalistic judicial exception to the principle of party self-determination," Castro v. United States, 540 U.S. 375, 286 (2003) (Scalia, J., concurring in part and concurring in the judgment), to recognize the common thread running through Bell's filings: he believes his Fourteenth Amendment due process rights, and certain HUD regulations, were violated when he was evicted without a grievance hearing first being held. Such a claim "aris[es] under the Constitution." 28 U.S.C. § 1331; see Brown v. Philadelphia Hous. Auth., 350 F.3d 338, 341 (3d Cir. 2003) (indicating that district courts have original jurisdiction to entertain public housing tenants' claims that they have been evicted "with little, if any, notice and no opportunity for a hearing, all in violation of their due process rights"). We therefore conclude that the District Court erred in dismissing Bell's amended complaint for lack of subject-matter jurisdiction.[4]

## IV. Conclusion

For the reasons given in this opinion, the judgment of the District Court is vacated and this matter is remanded for proceedings consistent with this opinion.

---

4 We reject Bell's claim on appeal that the District Court was obligated to appoint him counsel. Indigent civil litigants have neither a constitutional nor a statutory right to counsel. However, 28 U.S.C. § 1915(e)(1) does provide that a "court *may* request an attorney to represent any person unable to afford counsel." (emphasis added). The District Court recognized as much, and in denying Bell's motion for appointment of counsel it considered each of the factors listed in Tabron v. Grace, 6 F.3d 147, 153-57 (3d Cir. 1993), and did so in a thoughtful and thorough manner. We therefore conclude that the District Court did not abuse its discretion in denying Bell's motion for appointment of counsel.