# IN RE: JAMAL MORTON, Petitioner

S. Ct. Civ. No. 2011-0116
Supreme Court of the Virgin Islands
February 27, 2012

314

JOSEPH A. DIRUZZO, III, ESQ., Fuerst Ittleman, PL, Miami, Florida, *Attorney for Petitioner*.

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Respondent People of the Virgin Islands*.

QUEEN E. TERRY, ESQ., General Counsel, Superior Court of the Virgin Islands, St. Thomas, USVI, *Attorney for the Nominal Respondent*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(February 27, 2012)

PER CURIAM. This matter is before the Court on Jamal Morton's December 22, 2011 petition for writ of mandamus and January 13, 2012 motion to appoint Joseph A. DiRuzzo, III, Esq. as his court-appointed counsel *nunc pro tunc* to December 22, 2011, a January 23, 2012 opposition to both documents filed by the People of the Virgin Islands, and Morton's reply to the People's opposition. For the reasons that follow, we deny both the mandamus petition and the motion for appointment of counsel.

## I. BACKGROUND

On March 26, 2010, the People initiated a criminal case against Morton and two codefendants, which charged, among other things, first degree murder. The Superior Court, in an April 15, 2010 Order, subsequently appointed Attorney DiRuzzo as counsel for Morton in that criminal matter. After numerous proceedings — but before Morton's trial — Attorney DiRuzzo filed, on August 9, 2011, a document captioned "Motion to Require the Territory to Provide Constitutionally Adequate Attorney Fees for the Defense of the Above-Captioned Trial." In that motion — which was purportedly filed on behalf of Morton — Attorney DiRuzzo argued that the method the Superior Court employs to pay attorney's fees to court-appointed attorneys in murder cases is unconstitutional. Specifically, Attorney DiRuzzo argued that the compensation system violates the Sixth Amendment's guarantee that a

criminal defendant receive effective assistance of counsel because "the fees paid to counsel are so low that counsel is presumed ineffective[,] the fee schedule represents an inherent conflict of interest for defense counsel such that ineffectiveness is presumed," and "the combination of absurdly low fees and conflicts of interests creates a presumption of ineffectiveness of counsel." (App. 2.)

In a two-page order signed on September 2, 2011 but not entered by the clerk until September 6, 2011, the Superior Court judge assigned to the matter ("Nominal Respondent") denied the motion, as well as a motion by the Virgin Islands Bar Association for leave to appear as *amicus curiae*. Without citing to any legal authority, the Nominal Respondent held that "these motions, while of great significance, are collateral to the prosecution of this matter" and "that the issue of the Constitutionality of Attorney's Fees For the Defense Counsel shall be severed from the prosecution in this matter and be filed as a separate lawsuit (perhaps class action)." (App. 20.) Moreover, the Nominal Respondent stated that the "Virgin Islands Bar Association may be the real party in interest or an indispensable party" to such a lawsuit, and further added in a footnote that the Superior Court "is aware of the great concerns surrounding the issues raised" and that "[t]he problem that exists derives as a result of numerous cuts in the Superior Court's allotments." (App. 21.)

On the same day the clerk entered the order, Attorney DiRuzzo filed a notice of appeal on behalf of Morton, which this Court docketed as S.Ct. Crim. No. 2011-0070, as well as a motion requesting the Nominal Respondent to stay the criminal prosecution pending that appeal. In a September 7, 2011 Order, the Nominal Respondent denied the stay, and emphasized that "this Court's Order dated September 2, 2011, never denied [Morton]'s Motion to Require the Territory to Provide Constitutionally Adequate Fees for the Defense but instead severed that issue from the prosecution of these matters." (emphases removed). Moreover, the Nominal Respondent also observed that "[t]here is an issue as to whether Defendant Jamal Morton has standing to bring the motion . . . since there appears to be no connection between the effectiveness of Defendant Morton's counsel and the fees his counsel is paid."

Ultimately, this Court, in an October 14, 2011 Order, dismissed the appeal for lack of jurisdiction, and the United States Court of Appeals for the Third Circuit denied Morton's petition for writ of certiorari in a

December 22, 2011 Order. However, in its order denying certiorari, the Third Circuit "note[d] that [Morton], rather than seeking a ruling on the merits in the first instance on appeal, might have pursued such a ruling by way of a separate action (which the Virgin Islands Superior Court invited him to file) or a mandamus petition in the Virgin Islands Supreme Court seeking an order directing the Superior Court to rule on his motion as presented." Attorney DiRuzzo, ostensibly on behalf of Morton, filed the instant petition for writ of mandamus later that same day, which alleged that the Nominal Respondent, by declining to rule on the merits of the motion and instead advising him to initiate a separate civil suit to challenge the constitutionality of the compensation system for court-appointed attorneys, "abdicated [her] role as arbiter of fact and law between [Morton] and the government." (Pet. 4.) In a December 30, 2011 Order, this Court authorized the Nominal Respondent and the People of the Virgin Islands to respond to the mandamus petition.

Shortly after this Court issued the December 30, 2011 Order, the Clerk of this Court recognized that, when the Clerk's Office docketed the mandamus petition, it inadvertently failed to advise Morton, through Attorney DiRuzzo, of the need to pay the $105.00 docketing fee or file a motion to proceed *in forma pauperis*. Therefore, the Clerk issued an Amended Docketing Order on January 5, 2012, which informed him of this requirement. Later that same day, Attorney DiRuzzo filed a motion stating that Morton had been granted *in forma pauperis* status by the Nominal Respondent, and that the Nominal Respondent had appointed him to represent Morton throughout the Superior Court proceedings. The motion further argued that both Morton's *in forma pauperis status* and Attorney DiRuzzo's appointment automatically continued pursuant to Supreme Court Rule 3(c)[1] because "this original mandamus proceeding arises from an underlying criminal case." This Court, in a January 10,

---

[1] This rule reads, in its entirety, as follows:

In criminal matters, in forma pauperis status will continue on appeal if appellant or petitioner has been permitted to proceed IFP by the Superior Court as one who is financially unable to obtain an adequate defense, although the Supreme Court may, consistent with Supreme Court Rule 210, inquire periodically as to whether the appellant or petitioner continues to meet the requirements for IFP status. IFP status will not be continued if, before or after the notice of appeal is filed, the Superior Court certifies that the appeal is not taken in good faith or finds that the party is otherwise not entitled to continue to proceed in forma pauperis, in which event the Superior Court shall state in

2012 Order, denied the motion without prejudice on the grounds that Rule 3(c) provides that "[i]n criminal matters, *in forma pauperis* status will continue on appeal," whereas the instant matter is a civil original proceeding. Moreover, the Court noted that Supreme Court Rule 210 — which governs appointment of counsel in Supreme Court proceedings — limits the right to court-appointed counsel to "every direct criminal or quasi-criminal appeal," V.I.S.CT.R. 210.2(a), and only provides that appointments by the Superior Court "shall continue . . . on appeal." V.I.S.CT.R. 210.3(a).

On January 13, 2012, Attorney DiRuzzo, on behalf of Morton, submitted a completed application to proceed *in forma pauperis*, as well as a motion to appoint himself as Morton's counsel *nunc pro tunc* to the date of the mandamus petition. Specifically, the motion argues that, since the underlying Superior Court matter is a criminal case, this mandamus proceeding is quasi-criminal rather than civil, and therefore Morton qualifies for appointed counsel pursuant to Rule 210.2(a). In the alternative, the motion requests that this Court exercise its discretion to appoint Attorney DiRuzzo as Morton's counsel pursuant to Rule 210.2(d), which permits this Court to "appoint an attorney to represent a litigant in any matter, whether criminal or civil, if it determines that appointment of an attorney is required in the interests of justice." Finally, the motion contends that, if this Court rejects both arguments, it should declare Rule 210.3(a) unconstitutional on the grounds that its application to this case would violate Morton's rights under the Sixth Amendment.

The People filed a consolidated opposition to both the mandamus petition and the motion for appointment of counsel on January 23, 2012. As to the mandamus petition, the People argue that Morton has failed to meet any of the requirements for mandamus relief, and alleges that the mandamus petition is being used as a substitute for an interlocutory appeal of the September 6, 2011 Order. With respect to the request for appointment of counsel, the People note that the Sixth Amendment does not apply to civil matters, that no authority has been cited for the proposition that this proceeding is quasi-criminal, and that even if an appointment was warranted, Morton does not possess a right to demand

---

writing the reasons for such certification or finding. Supreme Court Rule 210 shall govern appointment of appellate counsel for criminal defendants who qualify for IFP status. V.I.S.CT.R. 3(c).

that this Court specifically appoint Attorney DiRuzzo as his counsel. Later that same day, Attorney DiRuzzo filed a reply, again ostensibly on Morton's behalf. In a January 24, 2012 Order, this Court granted Morton *in forma pauperis status* for the sole purpose of waiving the $105.00 docketing fee, but advised the parties that it would consider the appointment of counsel issue along with the merits of the fully-briefed mandamus petition. The Nominal Respondent has not filed a response to the mandamus petition.

## II. MANDAMUS RELIEF

■ Pursuant to title 4, section 32(b) of the Virgin Islands Code, this Court has jurisdiction over original proceedings for mandamus. However, a writ of mandamus is a drastic remedy which should be granted only in extraordinary circumstances. *In re Le Blanc*, 49 V.I. 508, 516 (V.I. 2008)). To obtain a writ of mandamus, a petitioner must establish that his right to the writ is clear and indisputable and that he has no other adequate means to attain the desired relief. *Id.* at 517. Furthermore, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004).

■ "A party possesses a 'clear and indisputable' right when the relief sought constitutes a 'specific, ministerial act, devoid of the exercise of judgment or discretion.' " *In re People of the V.I.*, 51 V.I. 374, 387 (V.I. 2009) (quoting *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997)), *cert. denied*, No. 09-3492, slip op. at 1 (3d Cir. Dec. 22, 2009). While the mandamus petition in this case alleges that the Nominal Respondent has breached a ministerial duty by failing to rule on the motion, *see In re Elliot*, 54 V.I. 423, 426-27 (V.I. 2010), the record clearly reflects that the Nominal Respondent's September 6, 2011 Order disposed of the August 9, 2011 motion by holding that the motion, as presented, was not cognizable as part of Morton's criminal case. Since the mandamus petition essentially challenges the correctness of that ruling, the ministerial duty at issue in this case is better framed as the Nominal Respondent's duty to issue a legally-correct decision.

■ "If the purported 'ministerial duty' is a judge's duty to issue legally-correct rulings, mandamus is only appropriate 'to correct judicial

action that is clearly contrary to well-settled law' — specifically, decisions that 'ignore[] clear, binding precedent from a court of superior jurisdiction.' " *In re People of the V.I.*, 51 V.I. at 387 (quoting *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994)). Here, the mandamus petition cites to absolutely no legal authority — let alone a decision binding on the Nominal Respondent — for the proposition that the Nominal Respondent was mandated to rule on the constitutionality of the Superior Court's payments to court-appointed counsel at the time the motion was presented. Since the party requesting a writ of mandamus bears the burden of proving that issuance of such a writ is warranted, *see In re Le Blanc*, 49 V.I. at 517, the complete failure to direct this Court to any relevant case law, standing alone, itself justifies a denial of the petition. *Cf. Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009) ("[A]ppellate courts will only review a claimed error that . . . is supported by argument and citations to legal authority.") (quoting *Vern Sims Ford, Inc. v. Hagel*, 42 Wn. App. 675, 713 P.2d 736, 742 (Wash. Ct. App. 1986)); V.I.S.Ct.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal. . . ."). Nevertheless, in the interests of justice, we explain why we conclude that the Nominal Respondent has not breached this ministerial duty.

This Court has found no cases binding on the Nominal Respondent that address how she should have treated the August 9, 2011 motion. We note, however, that in other jurisdictions, three distinct lines of cases have resulted in courts considering, on the merits, constitutional challenges to statutes and court rules limiting or otherwise restricting court-appointed attorney compensation. In the first line of cases, criminal defendants allege that, with respect to their specific cases, the compensation system caused them to receive ineffective assistance of counsel from their court-appointed attorney in violation of the Sixth Amendment or deprived them of due process under the Fifth Amendment, which justifies reversing their convictions. *See, e.g., State v. Smith*, 140 Ariz. 355, 681 P.2d 1374, 1381 (Ariz. 1984); *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294, 313 (Pa. 2008); *State v. Young*, 2007 NMSC 58, 143 N.M. 1, 172 P.3d 138, 139 (N.M. 2007). However, in the second line of cases, attorneys appointed to represent indigent defendants allege that the appointment constituted a taking of property under the Fifth Amendment, and that fee caps and similar limitations resulted in them not receiving

just compensation for services performed with respect to that specific appointment. *See, e.g., DeLisio v. Alaska Superior Ct.*, 740 P.2d 437, 442-43 (Alaska 1987); *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770, 774-75 (Ark. 1991); *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 842 (Kan. 1987); *State v. Lynch*, 1990 OK 82, 796 P.2d 1150, 1158 (Okla. 1990). Finally, some courts have permitted attorneys or defendants to file civil suits under a theory that the compensation system, although not violating the Sixth Amendment to the extent that any particular defendant should receive a new trial as a remedy, possesses such significant structural problems that prospective relief is warranted in order to prevent future harm stemming from conduct that — while likely to constitute harmless error in any particular criminal case — is nevertheless unconstitutional. *See, e.g., Luckey v. Harris*, 860 F.2d 1012, 1016-17 (11th Cir. 1988); *Simmons v. State Public Defender*, 791 N.W.2d 69, 70 (Iowa 2010).

We cannot conclude the Nominal Respondent's decision to decline to reach the merits of the motion and advise Morton or Attorney DiRuzzo to file a separate civil action constituted a breach of the ministerial duty to render a legally correct decision, given the absence of binding precedent, the procedural posture of this case, and persuasive — although divergent — authority from other jurisdictions. Notably, this Court has been unable to locate a single decision in any jurisdiction in which a court has permitted a defendant or an attorney to pursue a pre-conviction Sixth Amendment challenge to a compensation system within the underlying criminal case itself. While it is certainly possible that this Court could reach a different result in a future direct appeal — in which we would apply a far less deferential standard of review — we simply cannot hold that the Nominal Respondent's decision is so utterly incorrect that it warrants the extreme remedy of mandamus.[2] Accordingly, we deny the mandamus petition.[3]

---

[2] Although not determinative to our decision to deny mandamus relief, we also have significant doubts as to whether it would be appropriate for the Nominal Respondent to rule on the merits of the August 9, 2011 motion, as presented, given recent changes to the compensation system. At the time the motion had been filed, court-appointed attorneys in the Superior Court were paid $45.00 for each out of court hour and $65.00 for every in-court hour, and the motion argued that these rates are so low as to *per se* violate the Sixth Amendment. However, section 2(b) of Act No. 7316, which was passed by the Legislature on September 21, 2011 and became law without the Governor's signature on October 7, 2011, appropriated

## III. APPOINTMENT OF COUNSEL

█ Having considered the request for mandamus relief, we now consider Morton's motion to appoint Attorney DiRuzzo as his counsel in this proceeding. First, we reject the argument that a mandamus proceeding is quasi-criminal for purposes of Supreme Court Rule 210.2(a). As we have previously explained, the phrase "quasi-criminal" is a legal term of art, and refers to proceedings that, while labeled as civil, has the same objectives as a criminal proceeding or may result in imposition of criminal penalties. *See Bernhardt*, 51 V.I. at 349-50 (holding domestic violence restraining order proceedings are quasi-criminal because violation of the resulting order would constitute a crime punishable by 180 days incarceration). Here, this Court's decision to deny the mandamus petition clearly will not result in Morton or any other party being actually or potentially punished. The mere fact that the underlying Superior Court matter is criminal, without more, does not transform this mandamus action from a civil to a quasi-criminal proceeding. *See Lassiter v. Dep't. of Social Servs.*, 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981) ("[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.").

█ For virtually identical reasons, we hold that Morton's challenge to the constitutionality of Supreme Court Rule 210 on Sixth Amendment grounds lacks merit. As the United States Supreme Court has explained, "[t]he Sixth Amendment identifies the basic rights that the accused shall enjoy in 'all criminal prosecutions.' They are presented strictly as rights that are available in preparation for trial and at the trial itself. The Sixth Amendment does not include any right to appeal." *Martinez v. Ct. of*

---

$700,000 to the Superior Court for the sole purpose of compensating court-appointed attorneys at a rate not less than $75.00 per hour for in and out of court representation. Since the August 9, 2011 motion sought a ruling on the constitutionality of a compensation system that is no longer in effect, it is likely that — were this Court to issue a writ of mandamus — the Nominal Respondent would simply deny the motion as moot.

[3] Given our conclusion that there is no clear and indisputable right to a merits ruling from the Nominal Respondent at this stage of the proceedings, we ordinarily would not need to consider any of the remaining factors. Nevertheless, were it necessary to reach those issues, we would hold that Morton and Attorney DiRuzzo possess other adequate means to attain a ruling on the merits of their claim, such as an appeal after entry of a final judgment or — as suggested by the Nominal Respondent — filing the motion as a new civil action. *See Le Blanc*, 49 V.I. at 517.

*Appeal of California*, 528 U.S. 152, 159-60, 120 S. Ct. 684, 145 L. Ed. 2d 597 (2000). While the United States Supreme Court has, on equal protection grounds, required appointment of counsel for the initial appeal as of right from a criminal conviction, *see United States v. Eskridge*, 445 F.3d 930, 932 (7th Cir. 2006) (citing *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963)), no constitutional provision requires appointment of counsel — whether in a trial or appellate court — in a purely civil case. *See Bell v. Pleasantville Housing Auth.*, 443 Fed. Appx. 731, 735 n.4 (3d Cir. 2011) (unpublished) ("Indigent civil litigants have neither a constitutional nor a statutory right to counsel."); *Di Angelo v. Illinois Dep't of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989) ("Indigent civil litigants have no constitutional right to counsel at the expense of another — whether of the adversary or of the private bar."). Consequently, courts have consistently held, because "[c]omplaints for writs of mandamus . . . are civil in nature," that "indigent prisoners do not have a constitutional right to the appointment of counsel in such cases." *Doherty v. Caisley*, 104 Ill. 2d 72, 470 N.E.2d 319, 321, 83 Ill. Dec. 361 (Ill. 1984).

■ Nevertheless, although the United States Constitution does not require this Court to appoint counsel in mandamus matters, we possess the inherent and statutory authority, in our discretion, to appoint counsel to represent indigent litigants. *See* 4 V.I.C. § 513(d) ("The court may appoint an attorney to represent any person unable to employ counsel."). Pursuant to Virgin Islands Supreme Court Rule 210, this Court only exercises this power "if it determines that appointment of an attorney is required in the interests of justice." V.I.S.CT.R. 210.2(d).

■ We cannot conclude that compensating Attorney DiRuzzo, from public funds, for services rendered in conjunction with this mandamus proceeding would in any way further the interests of justice. As the Nominal Respondent implied in her September 7, 2011 Order when she observed that Morton may lack standing to file — prior to trial, let alone conviction — a motion challenging the constitutionality of the fees paid to all court-appointed attorneys in all murder cases, there is a very strong possibility that the underlying motion — as it was presented to the Superior Court — was primarily filed to further the interests of Attorney

DiRuzzo and other members of the Virgin Islands Bar.[4] Significantly, we note that, even after this Court advised Attorney DiRuzzo that it did not consider him to be Morton's court-appointed attorney in this matter, Attorney DiRuzzo did not request permission to withdraw as counsel based on this information, but instead continued to actively litigate the matter on the merits, despite knowing that there was a very strong possibility that this Court would not compensate him for his efforts. Regardless of whether we interpret these actions as proof of Attorney DiRuzzo possessing a pecuniary interest in obtaining a merits ruling on the August 9, 2011 motion or as evidence of Attorney DiRuzzo's dedication to providing legal services to the underprivileged by performing services that could ultimately be on a pro bono basis, it provides strong support for our conclusion that a court appointment was simply not necessary to further the interests of justice in this matter.[5]

## IV. CONCLUSION

Since the Nominal Respondent did not breach her ministerial duty to render a legally-correct decision, this Court finds no basis for granting the extraordinary remedy of a writ of mandamus. Moreover, because this is a civil proceeding in which the Sixth Amendment right to counsel is not implicated, and a court appointment would not further the interests of justice, we deny the motion for appointment of counsel.

---

[4] For instance, although the traditional remedy for successful pre-conviction ineffective assistance of counsel claims is discharge of the current attorney and appointment of a substitute attorney, *see, e.g., People v. Marsden*, 2 Cal. 3d 118, 84 Cal. Rptr. 156, 465 P.2d 44, 45 (Cal. 1970), the August 9, 2011 motion did not request that the Court relieve Attorney DiRuzzo of his appointment and appoint a different attorney who is willing and able to represent Morton at the rates that were in effect at the time. Rather, the motion requested, as the sole form of relief, that the Superior Court compensate Attorney DiRuzzo and all other court-appointed attorneys at higher rates.

[5] Moreover, even if this Court were inclined to appoint counsel for Morton in this proceeding, there is no basis in either the United States Constitution, statutory law, or court rule for allowing Morton to select Attorney DiRuzzo as his court-appointed attorney. To the extent it would be inappropriate to appoint the Office of the Territorial Public Defender, this Court would appoint, on a rotating basis, an attorney from the panel established by Supreme Court Rule 210. *See* V.I.S.CT.R. 210.3(b).