MIDWAY MOTOR LODGE OF ELK GROVE, Plaintiff–Appellee,

v.

INNKEEPERS' TELEMANAGEMENT & EQUIPMENT CORPORATION, Defendant–Appellant.

No. 94–3703.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1995.

Decided May 5, 1995.

Jerome R. Kerkman, Andrew M. Barnes, Quarles & Brady, Milwaukee, WI, Elizabeth L.R. Donley, Quarles & Brady, Madison, WI, and Daniel A. Zazove (argued) and Michael A. Kraft, Siegan, Barbakoff & Gomberg, Chicago, IL, for appellant.

William H. Alverson, Michael B. Apfeld (argued), Godfrey & Kahn, and Randall D. Crocker, Von Briesen & Purtell, Milwaukee, WI, for debtor-appellee.

Before ALDISERT,* EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

During the course of its reorganization under Chapter 11 of the Bankruptcy Code of 1978, Midway Motor Lodge of Elk Grove ("Elk Grove") rejected a contract for the lease of telephones and related equipment. 11 U.S.C. § 365(a). Rejection avoids specific performance, but the debtor assumes a financial obligation equivalent to damages for breach of contract. 11 U.S.C. § 502(g); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); Douglas G. Baird, *The Elements of Bankruptcy* 117–27 (rev. ed. 1993). Elk Grove said that it had no liability, because the lessor, Innkeepers' Telemanagement & Equipment Corp. (ITEC), had not satisfied its obligation to furnish "state of the art" equipment and had broken other promises. ITEC insisted that its equipment was up to date,

that Elk Grove had breached first, and that it should receive substantial damages.

Elk Grove is a partnership. Its partners are solvent, so creditors expected to receive 100¢ on the dollar—as Elk Grove's plan of reorganization promised. But Elk Grove's principal lender said that it would withdraw support unless the plan were confirmed by May 15, 1993. Elk Grove did not reject the lease until mid-February 1993, which left only three months to determine Elk Grove's liability to ITEC. Instead of ruling promptly on the question whether Elk Grove had any liability at all, the bankruptcy judge told the parties that he would estimate ITEC's claim under 11 U.S.C. § 502(c)(1). Elk Grove had argued that ITEC's recovery could not in any event exceed $4,500, but ITEC was demanding more than $200,000. Quantification one way or the other would permit the confirmation of a plan, postponing the question whether Elk Grove (or its partners) had to pay anything. Discovery was abbreviated; the bankruptcy judge allowed one day for trial.

Elk Grove is one of a dozen hotels flying the "Midway" banner that had contracted with ITEC for phone equipment and service. (The Elk Grove property is the only one in bankruptcy.) By mid–1992 the parties were at loggerheads about the adequacy of ITEC's performance—not only whether ITEC's equipment was "state of the art" but also whether ITEC was making proper payments to the hotels for calls made with calling cards. In January 1992 counsel for the hotels sent ITEC a notice of default. Discussions went nowhere. That summer the hotels began to deduct, from payments made to ITEC, the amounts they thought were their due for calling card rebates. Later in 1992 ITEC stopped paying telephone carriers for service to the hotels (one of its duties under the contracts), and in November 1992 ITEC sent the Midway hotels notices terminating the agreements. In December 1992 ITEC filed suit in an Illinois court demanding immediate return of its phone equipment. The suit was removed to federal court and a six-day evidentiary hearing held in February 1993 to determine the right to possession. So the notice of rejection Elk Grove filed in the

---

* Hon. Ruggero J. Aldisert, of the Third Circuit, sitting by designation.

bankruptcy court that month could not have been a surprise; one wonders why Elk Grove bothered. (Recall that rejection is a device to avoid specific performance, which ITEC did not want.) During the February 1993 hearing in Illinois, counsel for the Midway hotels stipulated that ITEC could remove its equipment, which the firm did by early April 1993. The February 1993 hearing in Illinois also served as the functional equivalent of discovery in the bankruptcy case.

On March 31, 1993, the bankruptcy court held a pretrial conference at which counsel for Elk Grove made it abundantly clear that in his view the hotel owed nothing because ITEC had not kept its promises. Counsel asked for prompt decision. The bankruptcy court's order following this hearing, scheduling trial for April 29, mentioned only a § 502(c) estimation procedure, but it also required the parties to file documents more suited to a trial on the merits. Among the documents filed was ITEC's request that the bankruptcy judge "enter a directed verdict in favor of ITEC" on the existence of a breach. Come April 29, the bankruptcy judge announced in open court that the proceeding entailed "the trial on the debtor's objection to claim ... and the § 502(c) motion of the debtor in possession.... That trial also took place simultaneously with the hearing pertaining to the claims. The matter was calendared, but not posted." The judge asked ITEC's lawyer: "Does that cause any problems"? Counsel replied "No, Your Honor." The bankruptcy judge ruled, on the merits, in favor of Elk Grove. Counsel did not protest. The bankruptcy court then confirmed Elk Grove's plan of reorganization.

ITEC was not as complaisant as its trial lawyer. It hired a new law firm, which has protested loudly. The district court rejected ITEC's arguments and affirmed. In this court ITEC contends that it was surprised by a decision on the merits after what it had supposed was an estimation procedure—which, it says, it did not fight vigorously because an estimate is just that, and it planned to pursue the solvent partners. Indeed, ITEC insists, the time to decision was so short, the notice so poor, and the discovery

so abbreviated, that it was deprived of due process of law.

■ Three things about this argument stand out. First, ITEC never told the bankruptcy judge that it had been ambushed. It is too late now. *Chicago Downs Ass'n v. Chase,* 944 F.2d 366, 370–71 (7th Cir.1991); *Goldberg v. Household Bank, f.s.b.,* 890 F.2d 965, 968 (7th Cir.1989). Second, ITEC does not seriously contest the decision on the merits. It does not say that the evidence (not only the evidence heard in open court but also that relayed from the Illinois proceeding) required or even permitted decision in its favor. It makes a procedural claim and nothing but. Third, this procedural claim does not rest on any part of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. ITEC invokes the due process clause of the fifth amendment. But that clause says nothing about pretrial discovery, for the most part an invention of the twentieth century. Even in criminal cases there is no constitutional right to pretrial discovery. *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211–12, 37 L.Ed.2d 82 (1973). (*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), obliges the prosecutor to disclose information favorable to the defense, but it does not require that disclosure precede trial. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Agurs,* 427 U.S. 97, 108–12, 96 S.Ct. 2392, 2399–2402, 49 L.Ed.2d 342 (1976).) Due process does guarantee the parties notice and an opportunity to be heard, but ITEC had ample notice that Elk Grove wanted the judge to knock out its claim, and it had an opportunity to be heard. Multi-billion-dollar tender offer cases are litigated in a week, with evidentiary hearings limited to a few hours; why 2½ months' notice and 1 day for a trial in a $200,000 case are too short is something we can't see—especially not given the proceedings in Illinois, which primed the pump.

■ ITEC does contend that an estimation proceeding is incompatible with a decision on the merits. If the bankruptcy judge is going to resolve the claim, what is there to estimate? Yet it is not inconsistent for a judge to say: "I want to determine whether a claim

is tenable and, if it is, to estimate its value." Often determining the proper amount of damages is much more time-consuming than determining whether the claim succeeds on the merits; it may be sensible to combine a final decision on liability with an estimate of damages. Similarly, it may be easier to determine that a claim fails than to decide that it succeeds. A single hearing to determine whether to deny a claim, and if not to estimate its value while reserving final decision on both liability and damages, could serve a useful role. ITEC accurately observes that the bankruptcy judge said a lot more about the § 502(c) proceeding than about an impending decision on the merits, which had at least the potential to mislead it. If ITEC had appeared on April 29 with no witnesses who could address the merits, and had limited its submissions to damages, its position would be stronger. But ITEC put on evidence about the "state of the art" dispute and about which side was first to dishonor its promises. At oral argument in this court ITEC said that it could have produced additional witnesses, which we assume is true, but avoidance of duplication at trial is not a vice. (ITEC did not make an offer of proof to the bankruptcy court or the district court, so we take its comments at oral argument here with a grain of salt.)

Indeed, even if the bankruptcy court had not said a word about addressing Elk Grove's objection to ITEC's claim, the court could have done so once it had heard enough to recognize that the claim had to fail. We have made this point repeatedly about proceedings in equity: if during hearings on a request for a preliminary injunction it becomes clear that the plaintiff lacks a claim, the district court should end the litigation promptly, without slogging through another hearing. *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 945 (7th Cir.1994); *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 459 (7th Cir. 1993). We occasionally do the same when reviewing a decision granting or denying preliminary relief. *Saukstelis v. Chicago,* 932 F.2d 1171, 1174 (7th Cir.1991); *Chicago Observer, Inc. v. Chicago,* 929 F.2d 325, 329 (7th Cir.1991); *Cronin v. Department of Agriculture,* 919 F.2d 439, 445 (7th Cir.1990). Such a step is not proper if lack of notice preempts the presentation of vital evidence and arguments, *Proimos v. Fair Automotive Repair, Inc.,* 808 F.2d 1273, 1277–78 (7th Cir.1987), but any judge must be able to recognize the point of diminishing returns and act accordingly—as the bankruptcy judge did here.

What may account for ITEC's change of attitude is an apparent change of stakes. On April 29, 1993, ITEC thought that it had $237,000 on the line, the amount of its final claim against Elk Grove. The stakes have ballooned. After the district court in Wisconsin affirmed the bankruptcy judge's decision, the district judge in Illinois granted judgment in favor of the other Midway hotels on the basis of issue preclusion, despite the lack of mutuality. See *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The bankruptcy judge assured ITEC that this would not happen: "[Y]our client doesn't have to be concerned that I will do something which will adversely affect its position on all of those other parcels." In the law of preclusion, however, the court rendering the first judgment does not get to determine that judgment's effect; the second court is entitled to make its own decision, and the district court in Illinois had a different view. The contrast between the stakes as the bankruptcy judge perceived them and the stakes as the district judge in Illinois perceived them may account for ITEC's fervent belief that it has been bushwhacked. ITEC has appealed from the Illinois decision; what effect the different stakes, and the bankruptcy court's assurance, may have, is a question for that appeal rather than this one. All we need decide is whether ITEC had a sufficient opportunity to make its evidence and arguments known in the dispute with Elk Grove. It did.

AFFIRMED.