**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2263
_____

In re:  BESTWALL LLC, f/k/a Georgia-Pacific LLC,
Appellant
_____

BESTWALL LLC,
Appellant

v.

ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS
PERSONAL INJURY SETTLEMENT TRUST; CELOTEX
ASBESTOS SETTLEMENT TRUST; FLINTKOTE
ASBESTOS TRUST; PITTSBURGH CORNING
CORPORATION PERSONAL INJURY SETTLEMENT
TRUST; WRG ASBESTOS PI TRUST; FEDERAL-MOGUL
ASBESTOS PERSONAL INJURY TRUST; BABCOCK &
WILCOX COMPANY ASBESTOS PI TRUST; UNITED
STATES GYPSUM ASBESTOS PERSONAL INJURY
SETTLEMENT TRUST; OWENS CORNING /
FIBREBOARD ASBESTOS PERSONAL INJURY TRUST;
AND DII INDUSTRIES, LLC ASBESTOS PI TRUST; *et al.*,
Appellees
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. No. 1-21-mc-0141)
District Judge:  Honorable Colm F. Connolly
_____

Argued
March 15, 2022

Before:   JORDAN, KRAUSE, and PORTER, *Circuit Judges*

(Filed August 24, 2022)
_____

Garland S. Cassada
Richard C. Worf, Jr.
Robinson Bradshaw & Hinson
101 North Tryon Street – Suite 1900
Charlotte, NC  28246

Noel J. Francisco   [ARGUED]
C. Kevin Marshall
Jones Day
51 Louisiana Avenue NW
Washington, DC   20001

Gregory M. Gordon
Jones Day
2727 North Harwood Street – Suite 600
Dallas, TX   75201

Chad S.C. Stover
Barnes & Thornburg
1000 North West Street – Suite 1500
Wilmington, DE   19801
        *Counsel for Bestwall LLC*

Beth E. Moskow-Schnoll   [ARGUED]
Ballard Spahr
919 North Market Street – 11th Fl.
Wilmington, DE  19801

Burt M. Rublin
Ballard Spahr
1735 Market Street – 51st Fl.
Philadelphia, PA   19103
        *Counsel for Armstrong World Industries, Inc. Asbestos*
        *Personal Injury Settlement Trust; Celotex Asbestos*
        *Settlement Trust; DII Industries, LLC Asbestos PI*
        *Trust; Flintkote Asbestos Trust; Pittsburgh Corning*
        *Corporation Personal Injury Settlement Trust; WRG*
        *Asbestos PI Trust; Federal-Mogul Asbestos Personal*
        *Injury Trust; Babcock & Wilcox Company Asbestos PI*
        *Trust; United States Gypsum Asbestos Personal Injury*
        *Settlement Trust; and Owens Corning / Fibreboard*
        *Asbestos Personal Injury Trust*

Daniel K. Hogan   [ARGUED]
Hogan McDaniel
1311 Delaware Avenue
Wilmington, DE   19806
        *Counsel for Matching Claimants*
        _____

OPINION
_____

JORDAN, *Circuit Judge*.

As part of its bankruptcy proceedings in North Carolina, Bestwall LLC wanted access to data owned by ten trusts created to process asbestos-related claims against other companies. That data is held by the trusts' claims processing agent, which is located in Delaware and opposed Bestwall's request. The Bankruptcy Court sided with Bestwall and authorized the issuance of subpoenas. Once Bestwall served those subpoenas, however, the trusts spoke up. They asked the U.S. District Court for the District of Delaware to quash the subpoenas, repeating the same arguments that had been made in the Bankruptcy Court by their claims processing agent. Certain asbestos claimants whose information was in the database also joined in the motion to quash. The arguments presented by the trusts and the claimants were evidently more persuasive to the District Court than they had been to the Bankruptcy Court, as the District Court quashed the subpoenas.

Bestwall has now appealed that order and rightly invoked the doctrine of collateral estoppel. We will therefore reverse and remand with instructions to enforce the subpoenas as originally ordered.

## I. BACKGROUND

In November 2017, Bestwall filed for Chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Western District of North Carolina. *In re Bestwall LLC*, 606 B.R. 243,

246 (Bankr. W.D.N.C. 2019). Facing asbestos-related mass tort liabilities, Bestwall wants to establish a settlement trust, as authorized by 11 U.S.C. § 524(g).[1] *Id.* According to Bestwall's proposed plan of reorganization, it would fund a $1 billion trust to pay current and future asbestos claims. The bankruptcy proceedings stalled, however, because of a dispute over how Bestwall's liabilities should be calculated. The court-appointed representatives of individuals with current and future asbestos claims argued that liability for future claims should be based on the settlements of past asbestos claims against Bestwall. Bestwall responded that those historical settlements are poor indicators of its true liability. It said then, and still contends, that asbestos claimants routinely "double-dip," taking money from multiple mass tort defendants and thus repeatedly recovering for the same injury. That approach, Bestwall argues, has resulted in artificially inflated settlements.

To prove its theory, Bestwall wants to inspect the claimant data from other asbestos settlement trusts, so that it can compare the list of individuals who have filed claims against those trusts with the list of those who have filed claims against it. To that end, it made a motion in the North Carolina

---

[1] That statute "allows a company [in Chapter 11 bankruptcy proceedings] to set up a trust that will assume its asbestos liabilities" and "authorizes an injunction to channel all asbestos-related claims to such a trust." *In re W.R. Grace & Co.*, 729 F.3d 311, 315 (3d Cir. 2013) (citing 11 U.S.C. § 524(g)(1)-(2)). Once the injunction goes into effect, any asbestos-related claims that would have been brought against the debtor must instead proceed against the trust. 11 U.S.C. § 524(g)(3)-(4).

Bankruptcy Court in July 2020 seeking subpoenas for that data, pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Motion").[2] The primary target of the subpoenas was an entity called the Delaware Claims Processing Facility (the "Facility"), a Delaware limited liability company that possesses the claimant data of, and administers legal claims against, ten asbestos settlement trusts doing business in Delaware (the "Trusts").[3] It is, in short, the claims processing agent for the Trusts.

Those Trusts were all established by corporate debtors-in-possession that, like Bestwall, sought to resolve their asbestos liabilities in bankruptcy.[4] The Trusts exist to process

---

[2] Bankruptcy Rule 2004 permits issuance of an "order [for] the examination of any entity[,]" if the information sought is relevant "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(a)-(b).

[3] Bestwall's motion primarily sought information from the Facility, but it also sought permission to subpoena the Trusts directly, if necessary. In addition, Bestwall successfully requested authority to issue a subpoena directed at the Manville Personal Injury Settlement Trust, but that trust is not based in Delaware and is not a party to this appeal.

[4] The ten Trusts are: the Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; the Celotex Asbestos Settlement Trust; the DII Industries, LLC Asbestos PI Trust; the Flintkote Asbestos Trust; the Pittsburgh Corning Corporation Personal Injury Settlement Trust; the WRG Asbestos PI Trust; the Federal-Mogul Asbestos Personal Injury

and pay out asbestos claims, which requires them to collect detailed information about each claimant's identity, family, finances, and medical history. The Trusts are obligated, under their founding documents, to keep that claimant information confidential, and they may disclose it only under certain narrow circumstances.

Seven of the ten Trusts eventually formed the Facility to administer and process asbestos claims on their behalf.[5] All ten Trusts have "claims processing agreements" with the Facility that make them its "clients" (J.A. at 443-44, 447), and they entrust it to collect the claimants' confidential information so it can process the claims. Although the claimant data belongs to the Trusts, the Facility considers itself the "custodian" or "steward" of the data in its possession. (J.A. at 445, 447.) Like the Trusts, it takes the confidentiality of that data seriously. According to its Chief Operating Officer, "[p]rotecting the security of these sensitive data is [the Facility's] highest operational priority." (J.A. at 445.) To that end, the Facility has made significant investments in data

---

Trust; the Babcock & Wilcox Company Asbestos PI Trust; the United States Gypsum Asbestos Personal Injury Settlement Trust; and the Owens Corning / Fibreboard Asbestos Personal Injury Trust.

[5] The DII Industries, LLC Asbestos PI Trust; the Federal-Mogul Asbestos Personal Injury Trust; and the Flintkote Asbestos Trust are not members of the Facility, although one of Flintkote's trustees sits on the Facility's board of directors.

7

security, and it does not commingle information from one Trust with that of another.

When Bestwall filed its Rule 2004 Motion, it served copies on both the Facility and the Trusts.[6]  Only the Facility appeared and expressed any objections.  It represented that the Trusts were "duty bound" to protect the claimant data sought by Bestwall and hence "exercised their ownership of and control over their claims data to protect such data from improper disclosure[.]"  (J.A. at 132-33.)  But the Facility also asserted that it was the one who received the claimants' information and that it had its own obligations to preserve the data's confidentiality.  It asked the North Carolina Bankruptcy Court to deny the Rule 2004 Motion as overly broad and intruding on confidential information or, in the alternative, to order that any production of claimant data be limited to "a random sample of up to 10% of the 15,000 claimants[,]" and be anonymized before being produced to Bestwall or its expert. (J.A. at 154-60, 166.)  The Facility noted that its objection "should not be construed to limit or waive any objections the

---

[6] The Trusts do not dispute that each of them was served with the Rule 2004 Motion and a notice of hearing.  Although the District Court in Delaware stated, when ruling on the motion to quash now at issue, that "Bestwall served the 2004 Motion on the [Facility], but not on any of the Trusts" (J.A. at 9), the record reflects otherwise.  The Motion was in fact served on each of the Trusts (*see* J.A. at 296-97, 302 (affidavit attesting that a copy of the Motion and the notice of hearing were "served … via First Class U.S. Mail upon" a list of entities that includes every Trust)), and the Trusts do not deny that.

8

individual … Trusts (or the individual claimants) might have to such subpoenas." (J.A. at 136 n.6.) And yet, despite being given notice of the effort to access their information, none of the Trusts appeared in the Bankruptcy Court to object to the Rule 2004 Motion. They were, it seems, content to let the Facility do the talking for them.

Following extensive briefing, record development, and a two-day hearing that included argument from the Facility, the North Carolina Bankruptcy Court granted the Rule 2004 Motion. In its order (the "Rule 2004 Order"), it authorized Bestwall to serve subpoenas on the Facility "with respect to" the Trusts and to serve subpoenas on the Trusts themselves, "if necessary to effectuate this Order." (J.A. at 51-52.) It also imposed several measures to protect the confidentiality of the data, including a requirement of post-production anonymization by Bestwall's expert. While it did not adopt the Facility's requested restrictions of random sampling and pre-production anonymization, it did establish procedures for "Matching Claimants" to file motions to quash.[7]

Bestwall proceeded to serve the subpoenas in Delaware on the Facility and each of the Trusts. Two weeks later, the Trusts – but not the Facility – moved in the District Court in Delaware to quash or modify the subpoenas. They made the same arguments about overbreadth and confidentiality that the Facility had made in the North Carolina Bankruptcy Court, and

---

[7] A "Matching Claimant" was defined in the Rule 2004 Order as (and is used herein to mean) any claimant who appeared in both the Trusts' and Bestwall's databases and was represented by counsel in submitting a claim.

9

they generally requested the same conditions on any production of claimant data – namely, random sampling and pre-production anonymization. Shortly afterward, several law firms claiming to represent more than 10,000 unidentified Matching Claimants joined in the Trusts' motion.

The District Court granted the motion to quash.[8] It observed that Bestwall's request for claimant data bore many similarities to the request made in a previous case, *In re Owens Corning*, 560 B.R. 229 (Bankr. D. Del. 2016), in which the bankruptcy court in the District of Delaware had placed conditions on access to asbestos-related claimant data. The Court found that "Bestwall ha[d] demonstrated a legitimate purpose in requesting the Claimant data" and that "the protections set in place by the [North Carolina] Bankruptcy Court will go a long way toward protecting Trust Claimants' sensitive data[,]" but it nonetheless held that "additional safeguards" were necessary to match the ones granted in *In re Owens Corning*, including the "appointment of an independent facilitator to oversee production." (J.A. at 21.) It quashed the subpoenas "without prejudice to [Bestwall's] right to seek reissuance of the subpoenas seeking a narrower document production that is consistent with the protections afforded by [*In re Owens Corning*]." (J.A. at 22.) In response to a motion from the Trusts to clarify the scope of its order, the District Court issued a second order adopting the Trusts' position that any subpoenas needed to include random sampling and pre-production anonymization, in addition to the *In re Owens*

---

[8] The District Court also denied a motion from Bestwall to transfer the proceedings back to the North Carolina Bankruptcy Court.

10

*Corning* protections. Bestwall timely appealed the District Court's orders.[9]

## II. DISCUSSION

Bestwall argues, among other things, that the District Court committed legal error by not applying collateral estoppel, or, as it is also called, the doctrine of issue preclusion, to hold the Trusts and the Matching Claimants to the outcome of the subpoena litigation in the North Carolina Bankruptcy Court. In particular, Bestwall points out that the Facility – which guards the confidentiality of claimant data on behalf of the Trusts – actively opposed the Rule 2004 Motion in the bankruptcy proceedings. Because of that, says Bestwall, the Trusts and the Matching Claimants should not have been permitted to reassert the same arguments in the District Court that were rejected in the earlier proceedings. On the record here, we agree.

### A. Jurisdiction and Standard of Review

The District Court had jurisdiction over the motion to quash. *See* Fed. R. Civ. P. 45(d)(3). We have jurisdiction over final decisions of the District Court. 28 U.S.C. § 1291.

---

[9] While this appeal was pending, Bestwall obtained and served new, more limited subpoenas on the Facility and the Trusts, and the Trusts and the Matching Claimants again moved to quash. Those developments do not moot this appeal, however, as Bestwall maintains its desire to enforce its original subpoenas, which, if enforced, entitle it to more information than would the revised subpoenas.

11

Although a discovery order is typically not final, and hence not appealable, we deem it final when the appellant would have no other avenue for obtaining review because the order in question was issued by a court other than the one adjudicating the underlying case. *In re Madden*, 151 F.3d 125, 127 (3d Cir. 1998). The District Court's order here fits that bill. Appeals from Bestwall's bankruptcy proceedings will eventually go to the Fourth Circuit, which lacks jurisdiction to review the District Court's order quashing the subpoenas, so Bestwall's only "means … to obtain appellate review" of that order lies with us. *Id.*[10]

The Matching Claimants nonetheless contend the order was not final because it quashed the subpoenas without prejudice to Bestwall's right to seek enforcement of different, narrower subpoenas. But, as the very statement of that argument confirms, the District Court granted the motion to quash *with* prejudice to Bestwall's right to enforce the originally issued subpoenas. We therefore have jurisdiction to hear Bestwall's appeal.

We review for abuse of discretion the District Court's decision to quash the subpoenas. *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005). Such a decision will be disturbed only if it "rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." *Id.* (quoting *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992)). "Application of

---

[10] Appeals from the U.S. District Court for the District of Delaware necessarily come to our Court. 28 U.S.C. §§ 41, 1294(1).

collateral estoppel is a question of law," over which we exercise plenary review. *Szehinskyj v. Att'y Gen.*, 432 F.3d 253, 255 (3d Cir. 2005).

## B. The Arguments Are Not Forfeited

Before turning to the question of collateral estoppel, we first consider the Trusts' and the Matching Claimants' assertion that Bestwall forfeited any right to address that issue by failing to raise it in the District Court.[11] As a court of review, we generally decline to consider arguments that were not first presented to the court whose ruling is before us. *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 760 (2022). But preserving an argument "does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). Although Bestwall did not use the words "issue preclusion" or "collateral estoppel" in opposing the motion to quash, its arguments in the District Court nonetheless advanced the same preclusion theory it pursues before us, namely, that the North Carolina Bankruptcy Court's ruling is legally binding on the Trusts and the Matching Claimants.

―――――――――――――

[11] The parties briefed this issue as concerning a "waiver" rather than a "forfeiture," but failing to raise an argument is a forfeiture. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

In the District Court, Bestwall contended that the Facility is "the claims administration and processing agent" for the Trusts, "was an active participant in [the North Carolina Bankruptcy Court] litigation," and "raised … identical objections" in that court as the Trusts were again pressing in the District Court. (J.A. at 314.) Bestwall explicitly and repeatedly argued that the Rule 2004 Order was "binding on the [Trusts]"; that the Trusts "were on notice of the [Rule 2004 Motion] since its filing"; and that the Trusts' "efforts to collaterally attack [the Rule 2004 Order] should be rejected." (J.A. at 315, 321; *see also* J.A. at 322-23.) Those assertions were sufficient to put the District Court and the parties on notice of the substance of Bestwall's claim that the Trusts were bound by the outcome of the Rule 2004 Motion, and indeed, both the District Court and the Trusts understood Bestwall's argument to be that the motion to quash was "an improper collateral attack" on the Rule 2004 Order. (J.A. at 16, 451.)

The Matching Claimants, too, were on notice of Bestwall's position that the motion to quash was an improper effort to relitigate the Rule 2004 Motion. In fact, Bestwall objected to the joinder in the motion to quash by one group of claimants – a group that had also participated in the North Carolina Bankruptcy Court proceedings – on the grounds that the joinder was "yet another collateral attack" on the Rule 2004 Order because the claimants had "had every opportunity to object to the [Rule 2004] Motion[.]" (D.I. 18 at 2.) And, in any event, none of the Matching Claimants joined in the motion to quash until it was fully briefed and under consideration, so they cannot fairly complain that Bestwall did not preemptively direct its arguments at them. The collateral estoppel issue is rightly before us.

14

## C.     The Rule 2004 Order Has Preclusive Effect

On the merits, Bestwall argues that issue preclusion bars the Trusts and the Matching Claimants from relitigating the Rule 2004 Motion because the Facility had already represented their interests before the North Carolina Bankruptcy Court and had come up short.  Collateral estoppel prohibits a party from relitigating an issue when: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016).[12]

Here, the first two elements are clearly met.  As to the first element, the disputes in the District Court and the North Carolina Bankruptcy Court turned on the same issues: whether the subpoenas were appropriate and, if so, whether any conditions should be placed on their enforcement.  Both courts' orders addressed the same dataset and the same requested conditions of production – random sampling and pre-production anonymization.  *See Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues … the difference in the applicable legal standards must be 'substantial.'").

---

[12] We apply the federal law of preclusion when, as here, the court that reached the original judgment was a federal court.  *Doe v. Hesketh*, 828 F.3d 1559, 171 (3d Cir. 2016).

15

And as to the second element, the Bankruptcy Court's judgment on those issues was final. The Matching Claimants argue that the Rule 2004 Order was not final because it expressly permitted them to follow certain procedures in filing motions to quash the subpoenas. But there was nothing "avowedly tentative" about the Rule 2004 Order. (Matching Claimants Answering Br. at 22-23 (quoting *Lummus Co. v. Commonwealth Oil Refin. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).) We have refused to apply an "unduly rigid" "concept of 'finality[,]'" and we accordingly treat an order as final for preclusion purposes as long as it is "sufficiently firm to be accorded conclusive effect." *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209-10 (3d Cir. 2001) (quoting Restatement (Second) of Judgments § 13 (1982)); *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997) (same). The North Carolina Bankruptcy Court's ruling conclusively determined whether the Rule 2004 subpoenas were appropriate and under what conditions they should be enforced. *See supra* Section II.A. That the Bankruptcy Court also included detailed procedures for the implementation of its order is no reason to treat the order as non-final.[13]

---

[13] Moreover, the North Carolina Bankruptcy Court's provision of a route for the Matching Claimants to challenge the subpoenas – without prejudging the merits of any such challenge – is also consistent with the principle that questions of preclusion are addressed by the court being asked to relitigate previously decided issues. *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1244 (9th Cir. 2017) (noting that "*the second court* must apply preclusion principles" (emphasis added)); *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995) ("In the law of preclusion … the court

16

This case turns on the third and fourth elements of collateral estoppel – whether the Trusts and the Matching Claimants were in privity with the Facility, and whether they had a full and fair opportunity to litigate the motion for issuance of the subpoenas. The Matching Claimants do not dispute that those two elements have been satisfied, so we are left to consider only the arguments made by the Trusts.[14] *See Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) (appellee who "fail[s] to respond to an appellant's argument in favor of reversal" forfeits "any objections not obvious to the court to specific points urged by the [appellant]" (second alteration in original) (quotation omitted)); *In re Incident Aboard D/B Ocean King*, 758 F.2d 1063, 1071 n.9 (5th Cir. 1985) ("treat[ing] the failure to respond to [an appellant]'s arguments as a concession" that the assertions are true).

---

rendering the first judgment does not get to determine that judgment's effect; the second court is entitled to make its own decision[.]").

[14] Bestwall argues that the Matching Claimants are "bound by the Rule 2004 Order and barred from relitigating it" because of their "relationship to the Trusts (and thus the Facility, as to its work for its Trust clients)." (Opening Br. at 34-36.) We understand that to be, in effect, a privity-plus-privity argument – that collateral estoppel applies to the Matching Claimants because they were in privity with the Trusts, which in turn were in privity with the Facility. We do not address that argument because the Matching Claimants make no effort to contest it. The point is conceded.

17

As to the third element, it is true that the Trusts were not themselves parties to the litigation over the Rule 2004 Motion. They were served with the Motion and do not claim they were unaware of it, but they did not participate in the proceedings. "[T]here is generally a bar against applying collateral estoppel to those who were not parties in the prior litigation[,]" but that bar does not apply if the nonparty was in privity with a party. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009). Bestwall accordingly argues that the Trusts were indeed in privity with the Facility and that the Facility was a party to the bankruptcy proceedings.

Privity exists when a nonparty to the prior action was "adequately represented by someone with the same interests who was a party to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (alteration and internal quotation marks omitted). "Under th[at] 'adequate representation' exception" to the principle that issue preclusion cannot be used against nonparties, "the interests of the party and nonparty must be squarely aligned and there must be either an understanding that the party is acting in a representative capacity or special procedural protections must have been in place in the original action to ensure the due process rights of nonparties who might face" preclusion. *Nationwide*, 571 F.3d at 313.

The exception applies here. First, the interests of the Facility and the Trusts were, and still are, squarely aligned. Both sought to fulfill their duties to protect the confidentiality of the same data, which one possesses and the other owns. Each made the same objections and arguments and sought the very same conditions on production of the data. And seven of the Trusts are members of the Facility, with a trustee of an

18

eighth serving on the Facility's board, which further confirms that the Facility and the Trusts have the very same interests.

Second, the record reflects an understanding that the Facility was acting in a representative capacity with respect to the claimant data. In opposing the Rule 2004 Motion, the Facility held itself out as an entity formed "to administer and process asbestos-related personal injury claims on behalf of" the Trusts and as the "steward" of the Trusts' information, and it characterized the Trusts as its "clients." (J.A. at 442-44, 447.) It explained that, although the Trusts owned the claimant data, it received all the claimant submissions, took all necessary precautions to fulfill the Trusts' obligation to keep the data confidential, responded to subpoenas on the Trusts' behalf, and took the lead on negotiating confidentiality restrictions on subpoenas to be served on the Trusts. The Facility also sometimes blurred the distinction between itself and the Trusts. (*See* J.A. at 309 (claiming that Bestwall was "ignor[ing] *the trusts' concerns* about invasiveness of this disclosure" (emphasis added)). *Compare* J.A. at 152 (referring to "any data produced by the Trusts"), *with* J.A. at 154 (saying that the Facility "would be amenable to producing [certain] data").) And, as the District Court noted, the Facility's opposition to the Rule 2004 Motion "was consistent with its duty under its [agreements] with the Trusts to use its best efforts" to ensure the confidentiality of their claimant data. (J.A. at 10.) It is therefore entirely fair to conclude that the Facility participated in the bankruptcy proceedings as a representative of the Trusts.

The Trusts seek to forestall that conclusion by claiming that the Facility, in opposing the Rule 2004 Motion, "told Bestwall it was not representing the Trusts in the Bankruptcy

19

Proceeding[.]" (Trusts Answering Br. at 26.) Their assertion overstates the Facility's position, which was that, "if the [Bankruptcy] Court grants the Motion, the Debtor [, i.e., Bestwall,] should subpoena the individual … Trusts, not [the Facility], and this Objection should not be construed to limit or waive any objections the individual … Trusts … might have to such subpoenas." (J.A. at 136 n.6.) That statement does not mean that the Facility was not representing the Trusts' interests, nor does it undermine the fact that the Facility's interests were completely aligned with the Trusts' and that it adequately represented those interests. If anything, the Facility's effort to forestall later objections to the Trusts renewing an attack on the subpoenas is just another example of the Facility speaking for the Trusts.

In addition, the North Carolina Bankruptcy Court proceedings included appropriate protections for the Trusts' due process rights. We have observed that "prior notice" to a nonparty "greatly strengthens any argument for preclusion." *Nationwide*, 571 F.3d at 313 n.19. The Trusts were given advance notice of the Rule 2004 Motion and had ample opportunity to present their arguments directly, rather than through the Facility. They knew that Bestwall sought subpoenas for their claimant data, and that those subpoenas might well be directed at them. The Trusts could have raised all their objections in the North Carolina Bankruptcy Court, just as they later did in the District Court. They are thus not ill-used by the recognition that their interests were adequately represented by the Facility before the Bankruptcy Court. In short, they were in privity with the Facility.

As to the fourth element – whether the Trusts had a full and fair opportunity to contest the Rule 2004 Motion – the

20

notice that the Trusts received informed them of Bestwall's desire to examine their data and alerted them to their right to respond to the Motion orally or in writing. They did indeed have a full and fair opportunity to litigate in the North Carolina Bankruptcy Court the very issues they later raised in the District Court. On this record, it is hard to avoid the impression that the Trusts chose to let the Facility carry the fight in the first instance and to keep themselves in reserve for a rearguard action. While perhaps prudent in battlefield strategy, such an approach in litigation risks issue preclusion, and that risk has been realized here.[15]

The Matching Claimants, for their part, argue only that issue preclusion cannot apply to them because Rule 45 entitles them to challenge the subpoenas in the district court "for the district where compliance is required[.]" Fed. R. Civ. P.

---

[15] Applying issue preclusion to the Trusts does not, as the Trusts suggest, disregard the legal distinction between a limited liability company and its members. Our holding that the Facility was acting on the Trusts' behalf in opposing Bestwall's Rule 2004 Motion before the North Carolina Bankruptcy Court, and was thus in privity with them, in no way implies that the Facility is just an alter ego of the Trusts, *see Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1241 n.11 (10th Cir. 2017) ("Numerous … circuits have found privity between related corporations without a concomitant finding of alter-ego status or an otherwise controlling relationship." (citing, *inter alia*, *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991))), nor does the conclusion that the other elements of issue preclusion have been met.

45(d)(3)(A); *see also* Fed. R. Bankr. P. 9016 (extending Rule 45 to bankruptcy cases). That the proper venue for a motion to quash lies in a particular district, however, does not change the fact that collateral estoppel can be a valid response to such a motion. Where, as here, the movant or its privy has already litigated the relevant issues elsewhere, collateral estoppel is a legitimate consequence. *See In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d 740, 746 (D.C. Cir. 2006) (recognizing a "right to raise collateral estoppel as a ground to quash or modify a subpoena"); *see also In re Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) (holding, under New York preclusion principles, that "an attack on a subpoena" is barred "in federal court" where the subpoena has already been litigated in state court). The drafters of Rule 45 contemplated exactly that, saying it may not be appropriate for the court asked to enforce a subpoena to resolve a motion to quash if the issuing court "has already ruled on issues presented by the motion[.]" Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. In that instance, transferring the motion to the issuing court, pursuant to Rule 45(f), "may be warranted[.]" *Id.*

Allowing litigants to invoke issue preclusion on a motion to quash is also consistent with the doctrine's "dual purposes" of "protect[ing] litigants from the burden of relitigating an identical issue with the same party or his privy" and "promot[ing] judicial economy by preventing needless litigation." *In re Subpoena*, 439 F.3d at 746 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). On this record, Rule 45(d) poses no obstacle to Bestwall's right to invoke collateral estoppel as a counter to arguments previously litigated in the North Carolina Bankruptcy Court.

## III.  CONCLUSION

For the foregoing reasons, we will reverse and remand with instructions to enforce the original subpoenas issued by the North Carolina Bankruptcy Court.