**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: EDWARD F. TAUMOEPEAU
and TALAHIVA I. TAUMOEPEAU,

    Debtors.

----------------------------------------

EDWARD F. TAUMOEPEAU and
TALAHIVA I. TAUMOEPEAU,

      Appellants,

v.

MANUFACTURERS & TRADERS
TRUST COMPANY and J. VINCENT
CAMERON, Trustee,

      Appellees.

No. 06-4233

---

**Appeal from the United States Bankruptcy Appellate Panel**
**for the Tenth Circuit**
**(10th Cir. BAP No. UT-05-102)**

---

Ronald Ady, Salt Lake City, Utah, for Debtors-Appellants.

Stephen B. Watkins (Paul M. Halliday, Jr., with him on the briefs), Halliday &
Watkins, P.C., Salt Lake City, Utah, for Appellees.

---

Before **TYMKOVICH** and **GORSUCH**, Circuit Judges, and **PARKER**, District Judge.[*]

---

**GORSUCH**, Circuit Judge.

---

Edward and Talahiva Taumoepeau argue that their mortgage holder violated their amended bankruptcy plan, approved by the bankruptcy court, when it foreclosed on the Taumoepeaus' residence. The bankruptcy court disagreed, holding that a separate order specifically authorized the creditor's course of conduct. The Tenth Circuit Bankruptcy Appellate Panel ("BAP") affirmed, issuing a single document that explained its reasoning and set forth its judgment. The Taumoepeaus lodged their notice of appeal with the BAP 34 days later, four days after the window for filing a notice of appeal closed – something that would normally render us without jurisdiction to entertain their appeal. *See* Fed. R. App. P. 4(a)(1). However, under Federal Rule of Appellate Procedure 4(a)(7), because the judgment was not set forth on a separate document, the Taumoepeaus had 180 days in which to notice their appeal with the BAP. Accordingly, their appeal is considered timely noticed, and we have jurisdiction to consider its merits, though, on those merits, we are obliged to affirm for substantially the same reasons set forth in the BAP's order and judgment.

---

[*] The Honorable James A. Parker, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation.

*  *  *

In February 2003, the Taumoepeaus filed a Chapter 13 bankruptcy petition. In connection with that petition, they submitted a plan to address their existing debts, which included several thousand dollars in missed mortgage payments. In July 2003, the Taumoepeaus amended their bankruptcy plan and, in it, continued to address their pre-petition mortgage arrears.

At the same time, however, the Taumoepeaus accrued additional debts, totaling approximately $10,000, by failing to make mortgage payments after the date of their bankruptcy petition. To address these post-petition arrears, the Taumoepeaus and their mortgage company eventually entered into a stipulation allowing the creditor to foreclose on Taumoepeaus's house if they failed, on a going-forward basis, to make certain agreed payments in a timely manner. In the event the Taumoepeaus defaulted, the parties' stipulation allowed the creditor to seek *ex parte* relief from the bankruptcy court to lift the Bankruptcy Act's "automatic stay" provisions that otherwise might have precluded it from seizing the Taumoepeaus' residence. *See* 11 U.S.C. § 362(a). The bankruptcy court approved the stipulation on September 11, 2003.

Four days later, the bankruptcy court held a confirmation hearing on the Taumoepeaus' amended bankruptcy plan addressing, among other things, the amount of pre-petition arrearage owed by the Taumoepeaus to their mortgage-holder. The amended plan was approved by the bankruptcy court on

November 13, 2003, and applied retroactively as of the September 15 hearing date.

Eventually, the Taumoepeaus defaulted on the stipulation covering their post-petition arrears, and the mortgage company, after providing notice to the Taumoepeaus, received approval from the bankruptcy court to foreclose on and sell the house. The Taumoepeaus neither sought to intervene with the bankruptcy court nor appealed its order on this score. Several months later, however, they did seek to block the new title-holder from evicting them and taking possession of the house. The Taumoepeaus argued that the amended bankruptcy plan superseded the stipulation and that, under the amended plan's terms, the mortgage company was not entitled to foreclose on their home.

The bankruptcy court disagreed with this interpretation of its orders, holding that the parties' stipulation survived its approval of the amended bankruptcy plan. The BAP affirmed, finding that, by its terms, the amended plan dealt only with debt for late mortgage payments incurred *before* filing for bankruptcy, while the stipulation plainly covered only debt for late mortgage payments incurred *after* filing for bankruptcy. Accordingly, the amended plan had no effect on the rights and obligations set forth in the stipulation, and the mortgage-holder was within its rights to proceed as it did. On appeal, the Taumoepeaus ask us to revisit this decision and to find that the amended plan in

-4-

fact subsumed post-petition debt and effectively nullified the stipulation and any orders pursuant to it.

* * *

As a threshold matter, we must determine whether the Taumoepeaus timely filed their notice of appeal. The timeliness of a notice of appeal is governed by the Federal Rules of Appellate Procedure, which apply to appeals from the BAP just as they do to other appeals taken to this court.[1] In particular, Rule 4(a) specifies that the notice of appeal in civil matters must be filed within 30 days after the judgment or order appealed from is entered; this requirement is "mandatory and jurisdictional." *Bowles v. Russell*, 127 S. Ct. 2360, 2362 (2007); *see also* 28 U.S.C. § 2107(a) (providing the statutory basis for the 30-day time period set forth in Rule 4(a)(1)).

In the case before us, the BAP issued an "Order and Judgment" on August 29, 2006, and the Taumoepeaus filed their notice of appeal with the district court on September 28, 2006. All of this would seemingly make this appeal timely, as the notice of appeal was filed within the 30-day window. The difficulty is that the parties before us now acknowledge that the notice of appeal in this situation

---

[1] *See* Fed. R. App. P. 6(b)(1) ("These rules apply to an appeal to a court of appeals under 28 U.S.C. § 158(d) from a final judgment, order, or decree of a district court or a bankruptcy appellate panel exercising appellate jurisdiction under 28 U.S.C. § 158(a) or (b)."); Fed. R. Bankr. P. 8001, Advisory Committee Notes ("Subsequent appeals to the courts of appeals . . . are governed by Federal Rules of Appellate Procedure.").

should have been filed not with the district court, but with the clerk of the BAP. *See* Fed. R. App. P. 4(a)(1)(A) (requiring that notice of appeal be filed with the district clerk within 30 days); *id.* 6(b)(1)(C) (instructing that, when the appeal is from a bankruptcy appellate panel, the term "district court" means "appellate panel"). And, while the district court transmitted the notice of appeal to the BAP clerk on October 2, 2006, this was four days after the normal 30-day deadline for timely filing. Thus, unless by operation of statute or rule *either* the Taumoepeaus had more than thirty days to file their notice of appeal with the BAP clerk *or* the notice can be deemed filed on the date received by the district court, it was untimely, rendering us without jurisdiction to consider their appeal.

As it happens, we believe the first possibility pertains here.[2] While Rule 4(a) requires that the notice of appeal must be filed within 30 days after the judgment appealed from is entered, it defines the term "entry" by reference to the terms of Rule 58 of the Rules of Civil Procedure. *See* Fed. R. App. P. 4(a)(7).[3] In turn, and with certain exceptions not applicable here, *see* Fed. R. Civ. P. 58(a)(1)(A)-(E), when a court's judgment is not set forth in a separate document,

---

[2] Because of this, we have no need to address the alternative and decidedly trickier question of whether the district court could "transfer" the Taumoepeaus' notice of appeal to the BAP, with the result that it would be deemed filed with the BAP on the date it was received by the district court. *See* 28 U.S.C. §§ 610, 1631.

[3] Rule 58 was amended effective December 1, 2007. As this appeal was taken under the prior version of the rule, citations are to that prior version.

Rule 58 indicates that the judgment is not deemed "entered" for purposes of triggering the need to file a notice of appeal until 150 days from the date it was entered on that court's docket sheet. Fed. R. Civ. P. 58(b)(2)(B); Fed. R. App. P. 4(a)(7)(A)(ii). Accordingly, rather than the normal 30 days, appellants have 180 days from the date the court's decision is entered on the docket to file a timely notice of appeal. *See* Fed. R. App. P. 4(a)(7)(A)(ii) (judgment deemed entered 150 days after entry in the civil docket); Fed. R. App. P. 4(a)(1) (notice of appeal required to be filed 30 days after entry).

This is exactly such a case. The BAP issued a single, six-page "Order and Judgment," reflecting a detailed recitation of the facts, its legal reasoning, as well as its judgment, and counsel stipulated at oral argument that no other, separate document exists setting forth only the BAP's judgment. Accordingly, by operation of our rules of appellate procedure, the Taumoepeaus had 180 days within which to file their notice of appeal and their notice, received by the BAP clerk on October 2, 2006, fell well within this period.

To be sure, the separate document rule is a technical one. But, as its name implies, it generally requires that judgment be entered in a *separate* document, one that is "not made part of the opinion and order" of the court. *Mondragon v. Thompson*, --- F.3d ----, 2008 WL 624434, at *2 (10th Cir. 2008). A combined document denominated an "Order and Judgment," containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's

-7-

prescription. *See, e.g.*, *Clough v. Rush*, 959 F.2d 182, 185 (10th Cir. 1992)

(holding that a district court's summary judgment order did not meet Rule 58's

requirements because it was "fifteen pages long [and] it contain[ed] detailed legal

analysis and reasoning"); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1232 (10th

Cir. 2002) (holding that a district court's "Combined Order and Judgment" did

not satisfy the rule on account of being "fifteen pages long, [and] contain[ing]

detailed legal analysis along with citations," in addition to providing for "entry of

judgment").[4]

The purpose behind the adoption of the separate document rule was to

reduce previously prevailing uncertainty about the appropriate trigger date for the

initiation of appellate process. *See, e.g.*, *Bankers Trust Co. v. Mallis*, 435 U.S.

381, 384-85 (1978); *Clough*, 959 F.2d at 185. While we doubt there was any

meaningful confusion as to the finality of the court's order in this particular case,

because counsel stipulated at oral argument before us that judgment was not

entered in a separate document, and because we apply the separate document rule

"mechanically" when doing so is required to preserve a party's opportunity to

---

[4] *See also* Fed. R. Civ. P. 58, Advisory Committee Notes, 1963 Amendment ("The amended rule . . . require[s] that there be a judgment set out on a separate document – *distinct from any opinion or memorandum* – which provides the basis for the entry of judgment.") (emphasis added); Moore's Federal Practice § 58.05[4][a] ("A judgment must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion.") (internal quotation omitted).

appeal, *Bankers Trust*, 435 U.S. at 386; *Thompson v. Gibson*, 289 F.3d 1218, 1221 (10th Cir. 2002) ("Rule 58 should be interpreted to preserve an appeal where possible . . . . "), we are compelled to hold the 180-day rule applied in this case and jurisdiction here is proper.

At the same time, we acknowledge that the separate document rule, while providing clearer guidance than existed before its adoption, is not without its own, not insignificant subtleties. For example, we have held that even a single document can qualify as a "separate" one under certain circumstances. *See, e.g.*, *Clough*, 959 F.2d at 185 ("[O]rders containing neither a discussion of the court's reasoning nor any dispositive legal analysis can act as final judgments if they are intended as the court's final directive and are properly entered on the docket."); *cf.* Moore's Federal Practice § 58.05[4][a]. And, the separate document requirement is subject to waiver. *See, e.g.*, *Allison*, 289 F.3d at 1233; *Clough*, 959 F.2d at 186; *Bankers Trust*, 435 U.S. at 387-88; *see also* Fed. R. App. P. 4(a)(7)(B). In this case, however, no such exceptional condition is even alleged to pertain.[5]

---

[5] Neither is this case akin to those in which we have suggested that "where there is no question about the finality of the court's decision, the absence of a Rule 58 judgment will not *prohibit* appellate review" when the appellant pursues an appeal *before* a separate document recording a judgment is entered. *Aviles v. Lutz*, 887 F.2d 1046, 1047 n.1 (10th Cir. 1989) (emphasis added); *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1272 n.3 (10th Cir. 1989). As the Supreme Court explained in *Bankers Trust*, "[i]f, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals

To be clear, we do not in any way suggest that the Federal Rules of Civil Procedure apply wholesale to proceedings before the BAP.[6]  Neither do we suggest that the BAP erred by employing a combined order and judgment. Rather, we simply acknowledge that, pursuant to our own rules for assessing the timeliness of an appeal, we are required to measure the entry of judgment in civil matters by reference to the terms of our Fed. R. App. P. 4(a)(7) and, by incorporation, Fed. R. Civ. P. 58.[7]  And under the standard operation of those rules, the Taumoepeaus had a 180-day window in which to notice their appeal in this case.

\* \* \*

---

to dismiss the appeal.  Upon dismissal, the district court would simply file and enter the separate judgment . . . .  Wheels would spin for no practical purpose." 435 U.S. at 385.  Thus, while a failure to comply with Rule 58 may be employed to protect an appeal from dismissal for being too late, *Thompson*, 289 F.3d at 1221, it does not inexorably follow that such a failure also may be used to require the dismissal and refiling of an appeal for being too early, *see* Fed. R. App. P. 4(a)(7)(B).

[6]  In proceedings before the bankruptcy court, of course, there is no question that the separate document rule applies.  *See* Fed. R. Bankr. P. 9021 ("Except as otherwise provided herein, Rule 58 . . . applies in cases under the Code."); *id.* ("Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document.").

[7]  *Cf. Funk v. LFLM Defendants*, 382 F.3d 1058, 1063-64 (10th Cir. 2004) (applying Rule 58's terms to an appeal from a district court proceeding, parallel to a BAP proceeding, under 28 U.S.C. § 158(a)); *Hunt v. Giuliano & Father Constr.*, 160 F. App'x 670, 672 (10th Cir. 2005) (same).

Turning to the merits, the question before us is whether the court-approved stipulation and the bankruptcy court's lift-stay order pursuant to that stipulation survived the court's order to confirm the Taumoepeaus' amended bankruptcy plan. In approaching this question, we pause to consider the appropriate standard of review. On the one hand, appellants note, we generally review *de novo* whether a party violated an automatic stay in bankruptcy, as well as whether an order is *res judicata. See, e.g.*, *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 769 (B.A.P. 10th Cir. 1998) (stay violation); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (*res judicata*). On the other hand, we owe substantial deference to the bankruptcy court's interpretation of its own orders. *See, e.g.*, *William B. Schnach Retirement Trust v. Unified Capital Corp. (In re Bono Development, Inc.)*, 8 F.3d 720, 721-22 (10th Cir. 1993).

In this case, however, the standard of review is immaterial to our conclusion, for we would affirm even under the *de novo* review advocated by the Taumoepeaus. It seems clear to us, as it did to the bankruptcy court and the BAP, that the amended bankruptcy plan sought to address only *pre*-petition arrears – the mortgage payments missed by the Taumoepeaus prior to filing for bankruptcy – and did not seek to address the separate and distinct question of the Taumoepeaus' *post*-petition arrears, a matter exclusively addressed by the parties' stipulation.

Confirming this in our minds is the fact that the mortgage payments missed by the Taumoepeaus after their bankruptcy petition were nowhere addressed in the amended bankruptcy plan approved by the bankruptcy court. Indeed, the amount of mortgage debt listed in the amended plan corresponds exactly (and only) to the Taumoepeaus' pre-petition arrearage, and payment schedules attached to the amended plan reflected that the Taumoepeaus would pay post-petition arrears *outside* the amended plan. The order approving the amended plan likewise makes no mention of the existence or amount of the Taumoepeaus' post-petition arrearage, the stipulation to cure post-petition arrearage, the court's order approving the stipulation, or the lift-stay order entered into pursuant to the stipulation. And at the confirmation hearing for the amended plan, appellants' counsel did not reference post-petition arrears or the parties' court-approved stipulation to address them.

In the face of these facts, we cannot agree with the Taumoepeaus that the amended bankruptcy plan was designed to address, or somehow implicitly did address, post-petition arrears and superseded the stipulation designed by the parties, and approved by the court just days earlier, to address those arrears. Like the bankruptcy court in interpreting its own orders, and like the BAP in affirming that interpretation, we conclude that the stipulation and amended plan can be read harmoniously, each addressing a separate debt owed by the Taumoepeaus. The BAP was therefore correct in concluding that "postpetition default . . . was not

-12-

litigated at the confirmation hearing and was not addressed by the Modified Plan or the Confirmation Order." BAP Op. at 5.

*Affirmed.*