RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

IN RE: CAMBRIAN HOLDING COMPANY, INC.,

*Debtor*.

──────────────────────────────────────────

HAZARD COAL CORPORATION,

*Lessor-Appellant*,

*v.*

AMERICAN RESOURCES CORPORATION; PERRY COUNTY
RESOURCES LLC,

*Lessees-Appellees*.

No. 23-5507

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington;
No. 5:21-cv-00040—Karen K. Caldwell, District Judge.

United States Bankruptcy Court for the Eastern District of Kentucky at Lexington;
No. 5:19-bk-51200—Gregory R. Schaaf, Bankruptcy Judge.

Argued: March 21, 2024

Decided and Filed: August 6, 2024

Before: GIBBONS, BUSH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Stanton L. Cave, STAN CAVE LAW OFFICE PLLC, Lexington, Kentucky, for
Appellant. Michael J. Gartland, DELCOTTO LAW GROUP PLLC, Lexington, Kentucky, for
Appellees. **ON BRIEF:** Stanton L. Cave, STAN CAVE LAW OFFICE PLLC, Lexington,
Kentucky, Douglas T. Logsdon, MCBRAYER PLLC, Lexington, Kentucky, for Appellant.
Michael J. Gartland, DELCOTTO LAW GROUP PLLC, Lexington, Kentucky, Billy R. Shelton,
SHELTON, BRANHAM & HALBERT, PLLC, Lexington, Kentucky, for Appellees.

————————————

**OPINION**

————————————

MURPHY, Circuit Judge.  This case pits a party that potentially committed negligence (by sitting on its rights) against a party that potentially committed fraud (by making false statements to a court).  An affiliate of Cambrian Holding Company held a lease to mine coal on land owned by Hazard Coal Corporation.  During its bankruptcy, Cambrian proposed to sell its interest in the lease to American Resources Corporation.  American Resources falsely warranted that it could obtain a mining permit.  The bankruptcy court approved the lease assignment on this mistaken understanding.  Hazard Coal learned later that American Resources could not lawfully mine coal.  It has repeatedly tried to unwind this assignment ever since.  The bankruptcy court has rebuffed every attempt.  This appeal grows out of Hazard Coal's challenge to the assignment in a separate suit.  In response to that challenge, American Resources returned to Cambrian's bankruptcy case and asked for a "declaration" that the court's prior orders had already rejected Hazard Coal's claims.  The bankruptcy court issued this declaration clarifying its orders, and Hazard Coal asks us to review its declaration order on appeal.  Although we find American Resources' conduct troubling, we must evaluate the bankruptcy court's order under a deferential abuse-of-discretion standard.  Given that court's closer proximity to the events, we see no such abuse.  We thus affirm.

I

Hazard Coal owns a coal mine in eastern Kentucky.  Decades ago, it leased its interest in this mine to another entity.  The lease allowed this lessee to extract coal from the mine in exchange for paying royalties to Hazard Coal.  At some point, a subsidiary of Cambrian Holding Company obtained the lessee's interest in the lease.  In 2019, however, Cambrian fell on hard times.  It filed for bankruptcy along with 18 affiliates, including its leaseholder subsidiary.  Because the differences between these affiliated debtors do not matter to this appeal, we will refer to them all as "Cambrian."  This case concerns the way that Cambrian transferred its

interest in the Hazard Coal lease to American Resources Corporation during the bankruptcy proceedings.

A

To understand the facts, one must understand the basics of bankruptcy law.  When a debtor like Cambrian files for bankruptcy, the filing creates an "estate" made up of the debtor's property interests.  11 U.S.C. § 541(a).  These interests can include a debtor's rights in a contract like Cambrian's rights in the Hazard Coal lease.  *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019).  If, as in this case, a debtor reorganizes under Chapter 11 of the Bankruptcy Code, the debtor may act as a "debtor in possession" by continuing to run its business while negotiating a reorganization plan with its creditors.  *See* 11 U.S.C. §§ 1101(1), 1107(a); *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 292 (2023).

A debtor in possession generally obtains the same "rights" that a bankruptcy trustee would possess over the estate.  11 U.S.C. § 1107(a).  Among other things, the debtor may "sell" "property of the estate" "other than in the ordinary course of business[.]"  *Id.* § 363(b)(1).  Such a sale, though, must satisfy § 363's rules.  The bankruptcy court must provide "notice and a hearing" for the sale.  *Id.*  And if another party has an interest in the property, this party may ask the court to ensure that the sale's terms "provide adequate protection of such interest."  *Id.* § 363(e).  Another section reinforces that a debtor may not "assign" its interest in an "unexpired lease" unless the debtor gives "adequate assurance of future performance by the assignee[.]"  *Id.* § 365(f)(2).

Courts have treated a bankruptcy court's order approving a sale of the debtor's property under § 363 as a "final" order.  This treatment has meant that a disgruntled party can immediately appeal a sale order.  28 U.S.C. § 158(a)(1); *see* 1 Collier on Bankruptcy ¶ 5.08 (16th ed. 2023); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003).  And it has meant that a sale order can trigger the doctrines of issue and claim preclusion in other cases.  *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008).

Yet parties who disagree with the sale order must move fast. Section 363(m) provides that a reviewing court's reversal of an order approving a property sale will "not affect the validity of" the sale "to an entity that purchased . . . such property in good faith" unless the challenger obtains a stay "pending appeal" of the order. 11 U.S.C. § 363(m). So if a buyer acted in good faith and a challenger fails to obtain a stay, a reviewing court cannot unwind the sale even if the bankruptcy court erred. *See In re Made in Detroit, Inc.*, 414 F.3d 576, 580–81 (6th Cir. 2005).

B

As part of its reorganization plan, Cambrian proposed to sell most of its assets, including its interest in the Hazard Coal lease, under § 363. In August 2019, the bankruptcy court approved "Bidding Procedures" for an auction of these assets. The court set a speedy pace. It scheduled the auction for September 18. It gave parties two days to object to any sale. And it scheduled a hearing on the sale for September 24. The Bidding Procedures warned that, if a counterparty to a contract with Cambrian (such as Hazard Coal) did not timely object to a contract assignment, the counterparty would be "estopped and permanently enjoined" from challenging the assignment. Order, B.R.339, at 11.

After Cambrian held the auction, the first successful bidder dropped out. So Cambrian held a second auction days later. This time, American Resources prevailed. Critically, however, the Bidding Procedures explained that Cambrian could consider a bid to buy its interest in the Hazard Coal lease only if the bidder verified that it was not "permit blocked"—meaning that government authorities had not blocked the bidder from obtaining a permit to mine coal. Procedures, B.R.339, at 5. Yet American Resources *was* permit blocked, and both companies knew as much. They proceeded with the sale anyway. To make matters worse, their proposed agreement (what we will call the "Original Agreement") falsely warranted that American Resources was *not* permit blocked.

Worse still, Cambrian and American Resources did not tell the bankruptcy court at the hearing about the sale that American Resources was permit blocked. On September 25, the bankruptcy court issued a "Sale Order" that approved the sale of Cambrian's lease interest to

American Resources.  This order identified American Resources as a "good faith purchaser" entitled to protection under § 363(m) and reiterated that Hazard Coal was now "barred from objecting" to the assignment.  Order, B.R.534, at 5–6, 10, 20.  The Sale Order also approved the Original Agreement, including its false warranty that American Resources was not permit blocked.  The order allowed Cambrian and American Resources to modify the agreement without further court approval if any change did "not have a material effect" on Cambrian or its estate.  *Id.* at 20.  If, by contrast, "[a]ny material" change would have "an adverse effect" on Cambrian and its estate, the bankruptcy court had to approve it after notifying all parties.  *Id.* at 21.  The deal closed days after the hearing.

For reasons known only to Hazard Coal, the company sat on its rights throughout this time.  It received written notice of Cambrian's intent to transfer the lease, the Bidding Procedures, and the deadlines to object.  Before the auction, however, it did not object to any assignment of the lease.  It also did not attend the auction.  And it did not attend the bankruptcy court's later hearing over the sale.  Lastly, it did not appeal the Sale Order.

Hazard Coal instead showed up later.  On October 9, it asked the court to reconsider, alter, amend, or vacate the Sale Order.  This motion originally raised challenges that do not matter now.  In a later "response," though, Hazard Coal added a new argument in support of the motion: its research showed that Kentucky had permit blocked American Resources.  This fact allegedly made it "impossible" for the parties to execute the Original Agreement.  Resp., B.R.810, at 18.  And American Resources' false statements allegedly showed that it was not a good-faith purchaser under § 363(m).

The bankruptcy court considered Hazard Coal's motion at a hearing on December 19.  The day before, Cambrian filed a "notice" that announced it had completed the lease assignment to American Resources and attached the final agreement.  These parties had completed the deal back on September 27.  But the contract contained different terms from the Original Agreement.  Their "Revised Agreement" disclaimed any suggestion that American Resources was not permit blocked.  The agreement instead noted that, if American Resources were found to be permit blocked, its status "would not reasonably be expected to have a material adverse effect on the" lease transfer.  Revised Agreement, B.R.856-1, at 18.

At the hearing the next day, Cambrian's counsel tried to justify the company's failure to disclose American Resources' permit-blocked status. She explained that American Resources wanted to bid at the first auction and that all parties in attendance knew that it was permit blocked. Cambrian asked Kentucky officials if they would allow American Resources to obtain permits. The officials said no. At the second auction, however, the officials supposedly backtracked and authorized American Resources "to reenter the" bidding. Tr., B.R.1625, at 43. Cambrian accepted American Resources' offer because it submitted the only one. Cambrian's counsel stated that everything moved "rapidly" and that the Original Agreement was merely a "sample form document." *Id.* at 44. She added that the new terms in the Revised Agreement (which eliminated the warranty that American Resources was not permit blocked) did not make a "material" change requiring court approval. *Id.* Another affected creditor disagreed, opining that Cambrian's failure to disclose this "hugely material" fact had breached its fiduciary duties. *Id.* at 61, 64. This creditor asked the court to vacate the Sale Order. The court suggested that it might consider a "fraud" motion in due course but found this debate premature because the creditor had not moved for such relief. *Id.* at 67.

In early January 2020, the court issued a "Reconsideration Order" that denied Hazard Coal's October 2019 motion. *In re Cambrian Holdings Co.*, 2020 WL 214746, at *1 (Bankr. E.D. Ky. Jan. 3, 2020). The court treated Hazard Coal's request as a motion to alter or amend the Sale Order under Federal Rule of Civil Procedure 59(e). *See id.* at *7. The court found that Hazard Coal did not satisfy this rule's standards because the company should have raised its objections before the court entered the Sale Order. *Id.* at *7–8. The court added that Hazard Coal's "new evidence"—that American Resources was permit blocked—did not justify its tardiness. *Id.* at *8. Because public information showed American Resources' permit-blocked status at the time of the auction, Hazard Coal could have objected on this basis before the court issued the Sale Order. *Id.*

Hazard Coal did not appeal this Reconsideration Order. About two weeks later, though, it moved to compel American Resources to restore power to its mine. According to Hazard Coal, American Resources had "abandoned" the mine in breach of the lease. Mot., B.R.974, at 3–4. American Resources' failure to pay the bills had caused the electric company to turn off the

power, creating a risk of "catastrophic loss" should the mine flood while its pumps were shut off. *Id.* Hazard Coal alternatively asked the court to vacate the assignment. As its grounds, it argued that the Revised Agreement had materially changed the Original Agreement and thus required the bankruptcy court's approval under the Sale Order. But the court had never approved the Revised Agreement.

On January 16, the bankruptcy court held another hearing. At the start, it stated that the Original Agreement's misrepresentation about American Resources' permit-blocked status was "troubling" and that it had yet to decide whether the Revised Agreement had made any "material" changes that required approval. Tr., B.R.1626, at 9. The court reiterated this point while speaking to a different creditor. *Id.* at 50. When Hazard Coal's counsel raised the issue, by contrast, the court suggested that it had denied the company's motion to reconsider and that the company was merely "asking for the same relief in different wrapping paper." *Id.* at 37.

The next day, the bankruptcy court denied Hazard Coal's motion in what we will call the "January 17 Order." The court reasoned that Hazard Coal's dispute about the mine's electricity qualified as a "state law lease dispute" between two non-debtors that Hazard Coal could not raise in a bankruptcy court. Order, B.R.1020, at 2. The court next held that its Reconsideration Order had already "rejected" Hazard Coal's alternative request to rescind the lease assignment. True to form, Hazard Coal did not appeal the January 17 Order.

C

This appeal instead grows out of a separate state-court suit—what we will call the "Lease-Termination Suit." Given the bankruptcy court's view that American Resources' failure to pay the electric company raised a state-law contract issue, Hazard Coal sued American Resources (and an affiliate) in Kentucky state court. In this Lease-Termination Suit, Hazard Coal alleged that American Resources had breached the lease by failing to pay royalties and keep the mine in working order.

American Resources removed the suit to federal district court under the court's diversity jurisdiction. The company then filed a counterclaim against Hazard Coal for tortious

interference.  American Resources alleged that Hazard Coal's incessant challenges to the lease assignment had hindered its ability to obtain the funding needed to operate the mine.

Hazard Coal moved for summary judgment.  It gave two main reasons why it did not have a valid lease with American Resources.  Hazard Coal argued that American Resources' *post-assignment* breaches of the lease had terminated the lease on its own terms.  Regardless, Hazard Coal next argued that Cambrian had not validly assigned the lease to American Resources in the first place because the bankruptcy court had never approved the Revised Agreement's allegedly material change.

In response, American Resources did something ordinary: it filed an opposition to the summary-judgment motion in the Lease-Termination Suit.  American Resources then did something out of the ordinary: it returned to bankruptcy court.  The company filed a standalone motion in Cambrian's bankruptcy case asking for a "declaration" that Cambrian had validly assigned the lease to it.  Mot., B.R.1466, at 1, 4.

In January 2021, a year after the Reconsideration Order, the bankruptcy court found it "beneficial" to issue what we will call the "Declaration Order."  Order, B.R.1499, at 1.  The court rejected Hazard Coal's argument that the Revised Agreement's change rendered the deal invalid.  It reasoned: "The [Reconsideration] Order already determined that the alteration did not affect the assumption and assignment of the Lease or the conclusion that Hazard Coal was estopped from disputing the transfer." *Id.* at 3.  It further clarified that the Declaration Order did not "alter the earlier decisions" and was designed only "to assist the parties' understanding of prior orders." *Id.*

At long last, Hazard Coal sought to appeal.  Treating the Declaration Order as "interlocutory," the district court granted Hazard Coal leave to appeal under 28 U.S.C. § 158(a)(3).  The court later affirmed the order and denied rehearing. *See Hazard Coal Corp. v. Cambrian Coal LLC*, 2022 WL 4116910, at *10 (E.D. Ky. Sept. 9, 2022); *Hazard Coal Corp. v. Cambrian Coal LLC*, 2023 WL 3431221, at *4–5 (E.D. Ky. May 9, 2023).

Meanwhile, Hazard Coal asked the district court overseeing its Lease-Termination Suit to resolve whether American Resources had breached the lease through its post-assignment

conduct.  The district court obliged.  *See Hazard Coal Corp. v. Am. Res. Corp.*, 2021 WL 4504685, at *9 (E.D. Ky. Sept. 30, 2021).  It granted Hazard Coal summary judgment in part, holding that American Resources' failure to pay royalties breached the lease and that this breach caused the lease to terminate.  *See id.* at *10–18.  At Hazard Coal's request, though, the court stayed the case pending Hazard Coal's appeal of the bankruptcy court's Declaration Order.  *See id.* at *9, *19.

Hazard Coal has now appealed the bankruptcy court's Declaration Order to this court. We review that order directly without deferring to the district court's opinion affirming the order. *See In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002).

II

On appeal, the parties dispute whether the Declaration Order (properly) clarified its earlier findings or (improperly) made new findings.  According to Hazard Coal, none of the bankruptcy court's prior orders had ever approved the Revised Agreement or found that this agreement made only immaterial changes that did not require court approval.  So it argues that the Declaration Order wrongly made new findings.  According to American Resources, the court reasonably found that its Reconsideration Order had already rejected Hazard Coal's claim that the court should void the sale because of American Resources' permit-blocked status.  We side with American Resources in this debate given our deferential standard of review.

A

Federal courts unanimously recognize that bankruptcy courts have the power to "interpret" their "prior orders."  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see In re Conco, Inc.*, 855 F.3d 703, 711 (6th Cir. 2017); *In re Dow Corning Corp.*, 456 F.3d 668, 675–76 (6th Cir. 2006); *see also In re Brown*, 55 F.4th 945, 950 (1st Cir. 2022); *In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016); *In re Essar Steel Minn., LLC*, 47 F.4th 193, 200 (3d Cir. 2022); *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997); *Matter of PFO Global, Inc.*, 26 F.4th 245, 253 (5th Cir. 2022); *In re Kimball Hill, Inc.*, 61 F.4th 529, 533 (7th Cir. 2023); *In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 741, 744 (8th Cir. 2003); *In re Franklin*, 802 F.2d 324,

326–27 (9th Cir. 1986); *In re Taumoepeau*, 523 F.3d 1213, 1218 (10th Cir. 2008) (Gorsuch, J.); *In re Optical Techs., Inc.*, 425 F.3d 1294, 1302–03 (11th Cir. 2005).

We had two questions about this longstanding principle. First, what are the typical reasons that might lead a bankruptcy court to interpret its prior order? As it turns out, the need for such an interpretation has arisen in a variety of contexts. Most often, a bankruptcy court will have previously issued an order granting an injunction against certain claims. If a party believes that a plaintiff has sought to pursue a claim in violation of this injunction order, the party might ask the bankruptcy court to agree with its interpretation and enjoin the claim (or sanction the plaintiff for filing it). *See Travelers*, 557 U.S. at 142–44; *Kimball Hill*, 61 F.4th at 532–34; *Essar*, 47 F.4th at 195–96, 201; *In re Galaz*, 841 F.3d 316, 321–22 (5th Cir. 2016); *cf. In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421, 423 (3d Cir. 2013); *In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 594–95 (6th Cir. 1992) (per curiam). Indeed, parties traditionally have enforced injunctions by seeking relief in the court that issued them—not in collateral proceedings. *See Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421–22 (6th Cir. 2000). In other cases, by comparison, the bankruptcy court might have previously issued an order awarding certain relief to certain parties. Parties might later dispute what this prior order requires and litigate the issue in some type of further proceeding in the bankruptcy case itself. *See Dow Corning*, 456 F.3d at 672–74; *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993); *see also Matter of AKD Invs.*, 79 F.4th 487, 490 (5th Cir. 2023); *In re Bono Dev., Inc.*, 8 F.3d 720, 721–22 (10th Cir. 1993).

Second, what standard of review have appellate courts applied to these order-clarifying bankruptcy opinions? They have unanimously given "substantial deference" to a bankruptcy court's reading of its own prior orders. *Travelers*, 557 U.S. at 151 n.4. Circuit courts have reasoned that the bankruptcy court that drafted the order can better decipher its meaning than a distant appellate court. *See Optical Techs.*, 425 F.3d at 1300; *In re Consol. Indus.*, 360 F.3d 712, 716 (7th Cir. 2004); *Tomlin*, 105 F.3d at 941. We, for example, have held that a bankruptcy court's interpretation of a prior order (including a reorganization plan) need only survive deferential "abuse of discretion" review. *Dow Corning*, 456 F.3d at 675 (citing *Terex*, 984 F.2d at 172); *In re Licking River Mining, LLC*, 911 F.3d 806, 810 (6th Cir. 2018). The bankruptcy

court might abuse its discretion if its reading cuts against a prior order's plain language. *See Convenient Food Mart*, 968 F.2d at 594–95. Otherwise, bankruptcy courts may reasonably resolve any "ambiguities" in the order. *PFO Global*, 26 F.4th at 255; *see Conco*, 855 F.3d at 709.

B

In this case, American Resources asked the bankruptcy court to clarify its orders in an unusual way. It did not ask the bankruptcy court to enjoin Hazard Coal from raising any claim challenging the lease assignment on the ground that this claim infringed an injunction in the Sale Order. *Cf. Travelers*, 557 U.S. at 142–44. Nor did this assignment issue arise organically from some other bankruptcy-related dispute in the bankruptcy case. *Cf. Dow Corning*, 456 F.3d at 672–74. To the contrary, the issue developed out of what the bankruptcy court itself described as a "state law lease dispute" between two non-debtors. Order, B.R.1020, at 2.

Given this fact, it is not clear to us what American Resources sought to accomplish in the Lease-Termination Suit with its motion for a "declaration" in the bankruptcy court. We can think of one possibility: the company has at times argued in this "declaration" proceeding that preclusion principles should bar Hazard Coal from challenging the lease assignment. *See Hazard Coal*, 2022 WL 4116910, at *9. Yet a court that issues a judgment in "case one" typically cannot preordain the preclusive effect of that judgment in "case two." *See Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011); 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4405, at 87 (3d ed. 2016). Rather, the second court usually gets to decide whether the first judgment precludes claims or issues raised in the second case. *Smith*, 564 U.S. at 307; *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995). Here, however, American Resources did not argue in the second case (the Lease-Termination Suit) that preclusion should bar Hazard Coal's challenge to the lease assignment. Rather, American Resources ran back to the first court (Cambrian's bankruptcy) to obtain a declaration against this challenge.

As the district court recognized, then, this declaration proceeding likely is the wrong one to decide any preclusion issues. *See Hazard Coal*, 2022 WL 4116910, at *9. Indeed, when a

party in a second case appeals a preclusion ruling, the appellate court generally reviews that ruling *de novo*. *See Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457 (6th Cir. 2022); *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851 (6th Cir. 1997). In this case, by contrast, we review the bankruptcy court's interpretation of its prior orders *deferentially*. *See Dow Corning*, 456 F.3d at 675. We doubt that American Resources can swap out a less favorable standard of review for a more favorable one merely by raising its preclusion arguments in the first case rather than the second. *Cf. Taumoepeau*, 523 F.3d at 1218.

At day's end, though, we need not decide these issues. We will leave the effect of the bankruptcy court's "declaration" for later. As the district court also recognized, we have only a narrow question before us: Did the bankruptcy court reasonably interpret its prior orders as barring Hazard Coal's challenge to the lease assignment? *See Hazard Coal*, 2022 WL 4116910, at *7. Given our abuse-of-discretion standard of review, we think so. *See Dow Corning*, 456 F.3d at 675. In particular, the Declaration Order reasonably found that the bankruptcy court's prior orders had "estopped" Hazard Coal "from disputing the" lease assignment's validity because Hazard Coal waited too long to assert its rights. Order, B.R.1499, at 3.

*First*, the Reconsideration Order's plain terms support this forfeiture reading. *See Cambrian*, 2020 WL 214746, at *8. The order treated Hazard Coal's post-sale motion to vacate the Sale Order as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). *See id.* at *7. And it recognized that Hazard Coal sought to unwind the sale because American Resources had concealed its permit-blocked status from the court. *See id.* at *8. But the court rejected this argument because Hazard Coal could have discovered that status in time to raise an objection at the hearing over the sale. *Id.* The court reasoned that everyone "present at the auction" had known that American Resources was permit blocked and that "publicly available" information had confirmed this status. *Id.* In short, the court held that Hazard Coal forfeited its objection to the assignment by failing to "take any substantive action" until after it issued its Sale Order and all parties had changed their positions in reliance on that order. *Id.*

*Second*, and admittedly, Hazard Coal could not have raised the *precise* challenge that it raises now at the time of the sale hearing on September 24, 2019. Hazard Coal currently contends that the lease assignment is invalid because the Revised Agreement eliminated the

original warranty disclaiming that American Resources was permit-blocked. According to Hazard Coal, this change is material and required the bankruptcy court's approval (something it never gave). Hazard Coal could not have objected to this change at the time of the hearing because Cambrian and American Resources did not enter the Revised Agreement until days *later*.

But the parties' course of proceedings shows that the Declaration Order reasonably read the Reconsideration Order's *general* forfeiture holding as broad enough to encompass this more *specific* claim tied to the Revised Agreement. *Cf. In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir. 1985). To begin with, the Revised Agreement's change concerned American Resources' permit-blocked status, and the Reconsideration Order already held that Hazard Coal could have discovered this status in time to protect its rights. Next, all parties knew about the Revised Agreement (and had debated its effect) before the court entered the Reconsideration Order on January 3, 2020. Among other things, Cambrian had posted this agreement on the docket in December 2019. Notice, B.R.856, at 1. At the hearing on this matter the same month, the court likewise noted that the Revised Agreement had "changed" the original's "reps and warranties" about American Resources' permit-blocked status. Tr., B.R.1625, at 42. So the court recognized that the Revised Agreement's change formed part of the same general objection tied to American Resources' wrongful failure to disclose its status at the sale hearing.

*Third*, the bankruptcy court's January 17 Order (issued a mere two weeks after the Reconsideration Order) confirms this view. Recall that, shortly after the Reconsideration Order, Hazard Coal moved the bankruptcy court to compel American Resources "to restore electrical power to the mine" or to rescind the assignment. Mot., B.R.974, at 1. In this motion, Hazard Coal highlighted the Revised Agreement's change, suggesting that the Original Agreement had been "mysteriously altered to allow [American Resources] to be permit blocked." *Id.* at 7. But the January 17 Order flatly rejected Hazard Coal's arguments for rescission tied to the Revised Agreement. The court viewed those argument as "the *same arguments*" that it had already "rejected in the" Reconsideration Order. Order, B.R.1020, at 2 (emphasis added). From the outset, then, the bankruptcy court connected Hazard Coal's specific argument about the Revised

Agreement's change to its general argument about American Resources' permit-blocked status. It has consistently found all such arguments forfeited because Hazard Coal sat on its rights.

Hazard Coal's contrary arguments do not convince us otherwise. It criticizes the Declaration Order on the ground that nothing in the record shows that the bankruptcy court ever approved the Revised Agreement or found this approval unnecessary because the agreement made only an immaterial change. We do not disagree. Yet the Reconsideration Order did not deny relief to Hazard Coal on either ground. Rather, it denied relief to Hazard Coal because the company should have objected to the lease assignment in a timely manner. That forfeiture ruling did not depend on an approval of the Revised Agreement or on a conclusion that the court did not need to approve the agreement.

Hazard Coal next points to a statement that the bankruptcy court made at a hearing the day before it issued its January 17 Order. At that hearing, the court noted that it had *yet* to decide whether the Revised Agreement contained a "material" change. Tr., B.R.1626, at 9, 50. According to Hazard Coal, this statement shows that—contrary to the Declaration Order—the court's Reconsideration Order could not have rejected Hazard Coal's current challenge because the court later disclaimed having issued a decision on the matter. But Hazard Coal misses the critical context in which the court made this statement. It was speaking to a *different creditor* that had preserved its rights. Indeed, Hazard Coal's counsel spoke at the same hearing and raised similar arguments to "rescind" the Sale Order. *Id.* at 37. The court rejected these arguments out of hand. It explained that Hazard Coal was merely "asking for the same relief in different wrapping paper" and that the Reconsideration Order had already held that Hazard Coal had "missed the boat" by failing to object at the proper time. *Id.* at 37, 39. The court's statements at this hearing thus reinforce our holding that it rejected Hazard Coal's arguments on forfeiture grounds.

Hazard Coal lastly suggests that it did not forfeit its rights because it could not have immediately appealed the Reconsideration Order. As we have already explained, however, courts have consistently treated sale orders under § 363 as "final" and immediately appealable. *See* 1 Collier, *supra*, ¶ 5.08. And since Hazard Coal had filed a Rule 59(e) motion to alter or amend the Sale Order, Hazard Coal's time for appeal ran from the Reconsideration Order's

rejection of this motion. *See* Fed. R. Bankr. P. 8002(b)(1)(B), 9023. So the company's failure to even attempt an appeal at that time also confirms its forfeiture.

\* \* \*

To reiterate, we find American Resources' conduct concerning. At oral argument, its counsel could not explain the seemingly blatant misrepresentations that his client made to the bankruptcy court. *See* Oral Arg. at 28:00–:10. And Hazard Coal has suggested that these misrepresentations caused it great harm because American Resources has not kept the mine in working order. But the bankruptcy court held that the misrepresentations did not suffice to overcome Hazard Coal's failure to timely challenge the lease assignment. And we must respect our deferential standard of review. In addition, now is not the time to consider Hazard Coal's arguments about the harm that American Resources has caused it. The district court in the Lease-Termination Suit has already held that American Resources breached the lease through its post-assignment conduct. *See Hazard Coal*, 2021 WL 4504685, at \*10–18. Our conclusion here says nothing about the appropriate damages (if any) that Hazard Coal should receive for that alleged breach or the lost value of Hazard Coal's mine.

We affirm.